UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| DATA MANAGEMENT ASSOCIATION INTERNATIONAL LLC, <br><br> Plaintiff, <br><br> v. <br><br> ENTERPRISE WAREHOUSING SOLUTIONS, INC., d/b/a EWSOLUTIONS, <br><br> Defendant. | ) <br> ) CASE NO.: 1:20-cv-4711 <br> ) <br> ) Judge: _____ <br> ) <br> ) Magistrate Judge: _____ <br> ) <br> ) <br> ) <br> ) |

**VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiff Data Management Association International LLC ("DAMA-I" or "Plaintiff"), through its undersigned counsel, for its complaint against Defendant Enterprise Warehousing Solutions, Inc. d/b/a EWSolutions, ("EWS" or "Defendant"), alleges as follows:

**Nature of the Action**

1. This is an action for federal trademark infringement and false advertising/unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

**Parties**

2. Plaintiff DAMA-I is a corporation duly organized under the laws of the State of Washington and has chapters located around the world. It is a not-for-profit, vendor-independent, global association of technical and business professionals dedicated to advancing the concepts and practices of information and data management. Its primary purpose is to promote the understanding, development, and practice of managing data and information as key enterprise assets to support organizations. DAMA-I is headquartered in Bothell, Washington, and owns the registered trademarks described herein.

1

3. According to publicly available records, EWS is a corporation duly formed under the laws of the State of Illinois with a principal place of business in Illinois. Upon information and belief, EWS Headquarters is located at 1 Tiffany Point, Suite #100, Bloomingdale, Illinois in this judicial district. Upon further information and belief, EWS maintains possession, custody, and control of the website pointed to by the following Uniform Resource Locator ("URL"): https://www.ewsolutions.com/. Upon further information and belief, EWS maintains possession, custody, and control of all subdomains affiliated with that URL (*e.g.*, https://www.ewsolutions.com/about/company-overview/). According to its website, EWS offers "strategic consulting services" and "implementation services" to assist organizations in employing "best practices and technology to achieve a competitive advantage in the marketplace." (*Id.*) It "specializes in constructing business intelligence / data warehouse and managed meta data environments that provide significant return on investment ('ROI')." (*Id.*) It also "offers world-class training taught at the client's choice of location." (*Id.*) Its website touts customers having national brand recognition, including many located outside the State of Illinois.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (actions arising under any Act of Congress relating to copyrights or trademarks); and 28 U.S.C. § 1338(b) (actions for unfair competition when joined with a substantial and related claim under federal copyright or trademark laws).

5. This Court has both general and specific personal jurisdiction over EWS because publicly available records establish that it is a corporation duly formed under the laws of the State of Illinois with a principal place of business in Illinois within this judicial district, because upon

information and belief, a substantial portion of the events giving rise to this Action occurred within Illinois and this judicial district, and as such exercise of personal jurisdiction over EWS is consistent with federal due process requirements and Illinois' Long-Arm Statute, IL 5/2-209.

6. Venue is proper within this District pursuant to 28 U.S.C. §§ 1391(b)(1) because, as alleged above, the defendant is a resident of the State of Illinois residing in this judicial district.

## DAMA-I's Registered Marks

7. By way of both common law and federal registration, DAMA-I has enforceable and protectable interests in various trademarks and service marks.

8. For example, DAMA-I is the lawful and rightful owner of U.S. Registration No. 3,816,444, a trademark registration for the mark "CERTIFIED DATA MANAGEMENT PROFESSIONAL." DAMA-I has been using the mark "CERTIFIED DATA MANAGEMENT PROFESSIONAL" in interstate commerce for well over a decade. The CERTIFIED DATA MANAGEMENT PROFESSIONAL mark became incontestable on September 15, 2015.

9. DAMA-I is also the lawful and rightful owner of U.S. Registration No. 3,816,445, a trademark registration for the mark "CDMP." DAMA-I has also been using the mark "CDMP" in interstate commerce for well over a decade. The CDMP mark became incontestable August 8, 2015.

10. DAMA-I is also the lawful and rightful owner of U.S. Registration No. 2,649,117, a trademark registration for the stylized mark **DAMA International**. DAMA-I has been using this stylized mark in interstate commerce since at least 2001. The stylized mark became incontestable on August 16, 2008.

11. DAMA-I is also the lawful and rightful owner of U.S. Registration No. 2,671,677, a trademark registration for the mark "DAMA." DAMA-I has been using the mark "DAMA" in

interstate commerce since at least 2001. The DAMA mark became incontestable on August 16, 2008.

12. DAMA-I is also the lawful and rightful owner of U.S. Registration No. 2,649,116, a trademark registration for the mark "DAMA INTERNATIONAL." DAMA-I has been using the mark "DAMA INTERNATIONAL" in interstate commerce since at least 2001. The DAMA INTERNATIONAL mark became incontestable on August 16, 2008.

13. Collectively, the registrations identified in paragraphs 8-12, above, are referred to herein as the "Registrations." The marks identified in paragraphs 8-12, above, are referred to herein as the "Marks-at-Issue."

## Defendant's Illicit Conduct

14. Since at least October 2019, EWS has been engaging in a scheme to willfully deceive the public into believing EWS is affiliated with, acting with the permission of, or otherwise acting in association with DAMA-I. At that time, DAMA-I became aware of online advertising apparently posted by and on behalf of EWS through its President/Chief Executive Officer, Mr. David Marco. Specifically, EWS posted on LinkedIn the following announcement: "DataManagementU.com unveils our new, online, on-demand, college-level, video course: DAMA CDMP® Data Management Fundamentals exam preparation course!" (https://bit.ly/2VeCgLi.) The advertisement used the ® identifier to expressly disclose "CDMP" as a federally registered trademark no less than four times. (*Id.*)

15. In that same advertisement, EWS prominently displayed the following photograph and logo:



16. At no time prior to October 2019, or at any time since, did EWS receive authorization from DAMA-I to use any of the Marks-at-Issue.

17. Upon learning of EWS' unauthorized use of the Marks-at-Issue, DAMA-I began further investigations to determine the extent of EWS' unauthorized use of the Marks-at-Issue. These investigations revealed that EWS maintains the URL https://damacdmp.com, through which it promotes an online, on-demand, college-level video exam preparation course using DAMA-I's Marks. On that website, EWS employs several of the Marks-at-Issue without authorization to confusingly refer to its prep course in at least three different and equally misleading ways: (1) the "DAMA CDMP® Fundamentals Exam Prep Course"; (2) "The DAMA CDMP prep course"; and (3) "the CDMP® Prep course." It also refers to the course in a somewhat less misleading, but still inaccurate and confusing, manner as "The DataManagementU CDMP® Prep course." (*Id.*)

18. The investigations also uncovered that EWS maintains at least the additional interactive websites identified above to advertise and solicit customers online. (*See, e.g.*, https://www.ewsolutions.com/.) As part of these online advertising efforts in interstate commerce, for example, EWS uses without authorization DAMA-I's stylized mark (and inherently the standard character marks for "DAMA" and "DAMA International") to tout its receipt of previous awards from DAMA-I, as evidenced below (*See* https://www.ewsolutions.com/):



19. As depicted above, EWS invites potential customers to contact EWS through its website, and it does so directly from the same webpage that prominently features DAMA-I's stylized mark without any additional context. For example, that webpage does not reveal that EWS has never received any award or public recognition from DAMA-I, and that only EWS' Mr. David Marco in his individual capacity ever received such accolades. Further, the webpage fails to indicate that Mr. Marco received individual accolades only twice—most recently in 2015, and prior to that over a decade ago. The absence of this additional context on this screen is problematic at least because it evidences EWS' failure to fully disclose pertinent details to potential consumers. In this instance, a potential customer is forced to navigate to a different screen, and away from the

interactive solicitation depicted in the screen above, to learn that EWS' awards and recognitions are not current and are arguably stale.

20. On further information and belief, EWS uses without authorization the Marks-at-Issue by way of the internet and in furtherance of its interstate commercial efforts through its website, "DataManagementU.com."

21. Prior to initiating suit, DAMA-I contacted EWS, though counsel, on November 18, 2019, in an effort to stop these unauthorized and infringing uses of DAMA-I's Marks. A copy of that correspondence is attached hereto as Exhibit 1, and the allegations contained therein are expressly incorporated herein by reference. Notably, EWS was informed of at least the following facts now expressly alleged herein:

    a. "DAMA-I owns incontestable federal trademark registrations and has used its DAMA marks (U.S. Registration Nos. 2671677, 2649116, and 2649117) since 1992";

    b. "DAMA-I has owned the dama.org website since 1996";

    c. "Due to its long term and widespread usage of the DAMA marks, the public has come to widely associate the DAMA marks with DAMA-I's renowned services";

    d. The acts described above, and in particular EWS' promotion of its exam preparation course, constitute unauthorized use of the Marks-at-Issue;

    e. The acts described above, and in particular EWS' promotion of its exam preparation course, are likely to cause customer confusion by insinuating an affiliation between EWS and DAMA-I that does not exist, which "is likely to

        lead consumers to mistakenly believe that [EWS'] services originate from, are endorsed by, licensed by, approved by, or otherwise affiliated with DAMA-I";

    f.  EWS' registration and use of the domain name, "damacdmp.com," is also likely to cause that same customer confusion;

    g.  The circumstances surrounding EWS' actions described above "strongly indicate that [EWS'] use [of] the DAMA trademarks and selection and use [of] a domain name that includes the DAMA mark in its entirety was undertaken with full knowledge of DAMA-I's rights, and is an attempt to take advantage of the goodwill associated with [DAMA-I] and its marks"; and

    h.  EWS' continued unauthorized use of DAMA-I's Marks would injure DAMA-I at least in the form of compromising the value, strength, and reputation of DAMA-I's Marks.

22. In that same correspondence, DAMA-I requested that EWS cease all use of DAMA-I's Marks; take steps to remedy any customer confusion already caused by the unauthorized use of DAMA-I's Marks; transfer the damacdmp.com domain name to DAMA-I; and refused EWS' request for "authorization to partner with DAMA-I regarding the subject training course" described above (the advertisements for which use DAMA-I's Marks without authorization, also as described above).

23. EWS, through counsel, responded to DAMA-I's correspondence on November 27, 2019, a copy of which is attached hereto as Exhibit 2. Therein, EWS disagreed with DAMA-I's contention that the marketing at issue "is likely to lead consumers to mistakenly believe that [its] services originate from, are endorsed by, licensed by, approved by, or otherwise affiliated with DAMA-I." Notwithstanding EWS' position, however, customer confusion in precisely this

manner has already occurred, and it is quickly becoming widespread. Indeed, EWS' unauthorized use of DAMA-I's Marks is confusing individuals within DAMA-I itself.

24. For example, Mr. Marco on behalf of EWS, refusing to take DAMA-I's "no" for an answer in attempting to partner with DAMA-I in the marketing of EWS' online course, instead reached out to other DAMA Chapters located outside of Illinois to extend the same request. These requests caused illicit confusion among the DAMA Chapters themselves, as many had to inquire directly of DAMA-I whether it had already agreed to partner with EWS given EWS' open and rampant use of DAMA-I's Marks and those confusingly similar thereto in promoting the course to date. Notably, it is at least EWS' refusal to discontinue use of DAMA-I's Marks following DAMA-I's explicit request to cease and desist, along with its continued perpetuation of confusion among its target audiences, that demonstrates (a) EWS' willful infringement of DAMA-I's Marks; and (b) EWS' knowledge of the harm its unauthorized activities inflict on DAMA-I.

## COUNT I

**(Federal Trademark Infringement, 15 U.S.C. § 1114)**

25. DAMA-I incorporates and realleges paragraphs 1 through 24 of this Complaint.

26. DAMA-I owns several current, enforceable federal trademark and service mark registrations, including all those identified above and referred to collectively as the Registrations. These Registrations provide DAMA-I with federal enforcement rights against those that use the Marks-at-Issue without authorization. DAMA-I owns all rights, title, and interest in and to the Marks-at-Issue by virtue of its ownership of the corresponding Registrations.

27. As identified and described above, EWS' interstate commercial efforts, including but not limited to interstate advertising, consulting, and implementation efforts, have included and

continue to include unauthorized use of the Marks-at-Issue. Such unauthorized use constitutes infringement under the Lanham Act.

28. EWS' unauthorized use of the Marks-at-Issue in interstate commerce, upon information and belief, has already caused confusion, mistake, or has otherwise deceived consumers as to the affiliation, connection, or association of EWS with DAMA-I, or as to the origin, sponsorship, or approval by DAMA-I of EWS' goods, services, or commercial activities.

29. EWS' unauthorized use of the Marks-at-Issue in interstate commerce is likely to continue to cause confusion, cause mistake, or deceive consumers as to the affiliation, connection, or association of EWS with DAMA-I, or as to the origin, sponsorship, or approval by DAMA-I of EWS' goods, services, or commercial activities.

30. EWS' unauthorized use of the Marks-at-Issue in interstate commerce enables EWS to benefit unfairly from DAMA-I's reputation, thereby giving EWS' infringing business efforts greater value than they otherwise would have. For example, and by no means limiting, EWS touting misleading affiliations with DAMA-I confuses consumers into believing the falsehood that DAMA-I vouches for or otherwise prefers the goods and services offered by EWS over EWS' competitors.

31. EWS has been aware of DAMA-I at all relevant times, and likewise EWS has been aware of the Marks-at-Issue and their corresponding Registrations at all relevant times. This is evidenced in part by EWS affixing ® to its use of DAMA-I's "CDMP" mark in at least one of its advertisements. EWS' notice of the Marks-at-Issue is also evidenced in part by the evident copying of DAMA-I's stylized mark, and in particular a DAMA-I graphic, that EWS reproduced in an aforementioned advertisement:

32. To the extent EWS claims to have not received actual notice or to have not been aware of the Marks-at-Issue or the corresponding Registrations, EWS has been aware of such marks and registrations by way of constructive notice.

33. EWS' unauthorized use of the Marks-at-Issue is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship, or approval of EWS' goods and services and/or to cause confusion or mistake as to any affiliation, connection, or association between DAMA-I and EWS in violation of 15 U.S.C. § 1114(1)(a).

34. DAMA-I is informed and believes, and on that basis alleges, that EWS' infringement of the Marks-at-Issue and corresponding Registrations as described herein has been, and continues to be, intentional, willful, and without regard to DAMA-I's rights.

35. DAMA-I is informed and believes, and on that basis alleges, that EWS has gained profits by virtue of its infringement of DAMA-I's rights in its Marks-at-Issue and Registrations. Such use has also caused damages to DAMA-I.

36. DAMA-I is also suffering and will continue to suffer irreparable harm from EWS' infringement of DAMA-I's Marks-at-Issue and corresponding Registrations insofar as DAMA-I's invaluable goodwill and reputation as a "not-for-profit, vendor-independent, global association of technical and business professionals" is being eroded by EWS' continuing infringement. (https://dama.org/content/mission-vision-purpose-and-goals.) EWS has no adequate remedy at law to compensate it for the consumer confusion and loss of business reputation, market position, and good will resulting from EWS' infringing activities. Pursuant to 15 U.S.C. § 1116(a), DAMA-I is entitled to an injunction against EWS' continuing infringement of the Marks-at-Issue and corresponding Registrations. Unless enjoined, EWS has stated its intention to continue their infringing conduct.

37. Because EWS' actions have been committed with intent to damage DAMA-I and/or to confuse and deceive the public, DAMA-I is entitled to treble its actual damages or EWS' profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b).

## COUNT II

### (Federal False Advertising/Unfair Competition, 15 U.S.C. § 1125(a))

38. DAMA-I incorporates and realleges the allegations set forth in paragraphs 1 through 37 of this Complaint.

39. As identified above, EWS uses without authorization the Marks-at-Issue in interstate commerce on a variety of websites. These websites, including but not limited to ewsolutions.com, datamanagementu.com, and damacdmp.com, are each under the direction, custody, and control of EWS, contain representations making unauthorized use of the Marks-at-Issue described above that constitute commercial advertisements in interstate commerce about EWS' own products and services.

40. By making unauthorized use of the Marks-at-Issue in these representations, EWS is making false statements of fact. For example, and by no means limiting, EWS' use of the "CDMP" Mark, in conjunction with affixing the ® symbol therewith, is correctly noting that the term CDMP is the subject of a federal registration; however, it simultaneously is misleading the consumer to believe either one of two false scenarios: (1) that EWS owns the federal registration to the mark "CDMP"; or (2) that EWS is using the mark with permission from the rightful owner, DAMA-I.

41. Additionally, EWS' use in these advertisements of the stylized globe mark depicted above, given its unmistakable similarity to DAMA-I's stylized mark identified above (in addition

to being a reproduction of a DAMA-I graphic), likewise at least implies the false statement of fact that EWS is either using the mark with DAMA-I's explicit authorization or that DAMA-I and EWS are otherwise affiliated and/or partnering in promoting EWS' commercial goods and services.

42. On information and belief, these and other of EWS' unauthorized uses of the Marks-at-Issue that will be identified during the course of discovery in this matter, have been made in commercial contexts so as to convey literally a falsehood that DAMA-I and EWS are in any way affiliated or so as to convey a false and misleading-in-context impression likely to deceive consumers into believing that EWS is operating in concert with DAMA-I, is operating with express or implied approval or authorization from DAMA-I, or is otherwise partnering with DAMA-I in a manner EWS' competitors are not.

43. Upon information and belief, EWS' express and implied false statements identified herein, and others that may be uncovered during the course of discovery in this matter, have already deceived or have the tendency to deceive a substantial segment of EWS' audience (namely, its customers and potential customers). For example, and by no means limiting, its online advertisements containing these false statements have unlimited reach, and they are presented in a manner lacking sufficient context and information to disabuse consumers of the misleading notion that EWS is conducting business in affiliation with or with the approval and authorization of DAMA-I.

44. EWS' express and implied false statements of fact identified herein are material misrepresentations, in that they are likely to persuade or otherwise influence purchasing decisions in EWS' favor. Because DAMA-I is renowned as a neutral, "not-for-profit, vendor-independent, global association" of data management professionals, any for-profit data management

13

commercial enterprises would gain a significant competitive advantage if it were to tout that its goods and services were preferred, approved, or authorized by DAMA-I to the exclusion of others. Data management consumers would trust DAMA-I to remain a disinterested neutral in the commerce of data management, so its seal of approval on a data management product or service would certainly influence a purchasing decision. For at least these reasons, EWS' express and implied false representations regarding its affiliation, partnership, or other association with DAMA-I is likely to influence consumers into purchasing EWS's goods and services over its competitors' goods and services.

45. As noted above, EWS' false express and implied statements identified herein have been made online, and upon information and belief elsewhere, with the intention and effect of entering interstate commerce.

46. EWS' false express and implied statements identified herein have caused and are likely to further cause injury to DAMA-I, at least in the form of lost goodwill resulting from the erroneous public perception caused by EWS' statements that DAMA-I is somehow affiliated with, working in conjunction with, or is otherwise approving or favoring EWS in its commercial endeavors to the exclusion of EWS competitors.

**PRAYER FOR RELIEF**

WHEREFORE, DAMA-I respectfully requests that this Court enter judgment against EWS as follows:

1. Finding that: EWS has violated Section 32 and Section 43(c) of the Lanham Act (15 U.S.C. § 1114 and § 1125, respectively);

2. Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116, permanently restraining and enjoining EWS, its officers, agents, employees,

and attorneys, and all those persons or entities in active concert or participation with them from any continued or further use of the any of the Marks-at-Issue without DAMA-I's explicit written authorization;

3. Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any EWS product or service at issue in this action has been authorized by, approved by, or is in any other way related to DAMA-I;

4. Awarding DAMA-I the larger of the following damages amounts: (1) damages proven at trial that DAMA-I sustained as a result of EWS' illicit conduct; or (2) the amount of profits EWS realized as a result of its illicit conduct;

5. Awarding DAMA-I an additional amount in damages twice that of the award of paragraph 4, immediately above, in recognition of EWS' willful infringement and for this case being exceptional;

6. Awarding DAMA-I all other damages to which it is entitled under applicable federal, state, and/or common law;

7. Awarding DAMA-I pre-judgment interest on any monetary award made part of the judgment against EWS;

8. Awarding DAMA-I its costs, attorneys' fees, investigatory fees, and expenses to the full extent provided by Section 35 of the Lanham Act (15 U.S.C. § 1117); and

9. Awarding DAMA-I such additional relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, DAMA-I requests a trial by jury in this matter.

Dated this 11th day of August, 2020.

Respectfully submitted,

By:

/s/ Joseph M. Kuo
Joseph M. Kuo (ARDC 6216400)
SAUL EWING ARNSTEN & LEHR, LLP
161 N. Clark Street, Suite 4200
Chicago, IL 60601
Tel. (312) 876-7100
Fax.: (312) 876-0288
joseph.kuo@saul.com

John D. Denkenberger, WSBA No. 25,907 (*pro hac vice* pending)
Brian F. McMahon, WSBA No. 45,739 (*pro hac vice* pending)
CHRISTENSEN O'CONNOR JOHNSON KINDNESS$^{PLLC}$
1201 Third Avenue
Suite 3600
Seattle, WA 98101
Telephone: 206.682.8100
Fax: 206.224.0779
john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
litdoc@cojk.com

Attorneys for Plaintiff DATA MANAGEMENT ASSOCIATION INTERNATIONAL LLC

## VERIFICATION

I, April Reeve, am the Vice President Financial Services and Treasurer of DATA MANAGEMENT ASSOCIATION INTERNATIONAL LLC ("DAMA-I").

1. I have personal knowledge of the facts concerning and relating to DAMA-I as set forth in the foregoing Verified Complaint and if called to testify as to these matters would do so competently.

2. I verify under penalty of perjury that the foregoing is true and correct.

Executed on August 7, 2020.

*[signature]*

April Reeve
VP Financial Services & Treasurer
Data Management Association International LLC

**CERTIFICATE OF SERVICE**

      I hereby certify that on Tuesday, August 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

                    /s/ Joseph M. Kuo
                    Joseph M. Kuo