**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DATA MANAGEMENT ASSOCIATION INTERNATIONAL LLC, | ) CASE NO. 1:20-cv-4711 |
| Plaintiff, | ) Judge: Weisman |
| v. | ) Magistrate Judge: _____ |
| ENTERPRISE WAREHOUSING SOLUTIONS, INC., d/b/a EWSOLUTIONS, | ) |
| Defendant. | ) |

**DATA MANAGEMENT ASSOCIATION INTERNATIONAL LLC'S BRIEF IN**
**SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 1

    A.    DAMA-I and Its Trademarks................................................................................. 1

    B.    EWS and Its Illicit Conduct .................................................................................. 3

ARGUMENT ....................................................................................................................... 4

    A.    Applicable Legal Standards ................................................................................... 4

    B.    All Factors Considered in Granting Injunctive Relief Favor DAMA-I ................ 7

        1.    DAMA-I Is Likely to Prevail on Its Trademark Infringement Claims ................. 7

        2.    DAMA-I Will Continue to Suffer Irreparable Harm Absent Relief .................... 13

        3.    The Balance of Equities Favors a Preliminary Injunction ................................... 14

        4.    A Preliminary Injunction Advances the Public Interest ....................................... 15

    C.    No Bond Is Necessary.......................................................................................... 15

CONCLUSION................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**

*B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015) ................................................ 5

*Caster Connection, Inc. v. Colson Grp. Holdings, LLC*, No. 20 C 1598, 2020 WL 2745982 (N.D. Ill. May 27, 2020) ............................................................................................................. 6

*Harrods Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658 (E.D. Va. 2001).................. 8

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085 (9th Cir. 2013) ................................. 10

*Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988)...................... 5

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936 (9th Cir. 2002)........................... 9, 10

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061 (9th Cir. 2003)..... 6, 7

*Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F.Supp.3d 891 (N.D. Ill. 2019).............. 5

*Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-CV-05314, 2016 WL 6092636 (N.D. Ill. Oct. 19, 2016) ......................................................................................................................... 15

*Matal v. Tam*, 137 S. Ct. 1744, 198 L. Ed. 2d 366 (2017)........................................................... 5

*Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111 (7th Cir. 1997) ................. 5, 7

*Munaf v. Geren*, 553 U.S. 674 (2008)........................................................................................... 4

*Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir. 2001).................................................. 6

*Prof'l Towing & Recovery Operators of Ill. v. Box*, No. 08 C 4096, 2008 WL 5211192 (N.D. Ill. Dec. 11, 2008)......................................................................................................................... 15

*Qualitas Mfg. Inc. v. R. Lang Co.*, No. 09 C 2255, 2010 WL 11658336 (N.D. Ill. May 3, 2010). 9

*Saeilo Enters., Inc. v. Alphonse Capone Enters., Inc.*, No. 13 CV 2306, 2014 WL 6883085  (N.D. Ill. Dec. 5, 2014) ................................................................................................. 13, 15

*Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707 (N.D. Ill. 2014)........................... 6, 11, 12

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426 (9th Cir. 2017) ......................... 10

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010)................................. 13

*Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409 (7th Cir. 2019) ................................................... 5

*USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427 (N.D. Ill. 2019) ................................................................................................................ 14

*Verizon California Inc. v. Lead Networks Domains Private Ltd.*, No. CV 09-613-ABC (CWX), 2009 WL 10700112 (C.D. Cal. Feb. 17, 2009) .......................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7 (2008) ......................................... 4, 7

**Statutes**

15 U.S.C. § 1057(b) ................................................................................................ 5

15 U.S.C. § 1065 .................................................................................................... 5

15 U.S.C. § 1072 .................................................................................................... 5

15 U.S.C. § 1115(b) ............................................................................................. 5, 8

**INTRODUCTION**

This is a case of trademark infringement and false advertising/unfair competition. Plaintiff Data Management Association International LLC ("DAMA-I") is a not-for-profit vendor-independent global association of technical and business professionals dedicated to advancing concepts and practices relating to the field of information and data management. Defendant Enterprise Warehousing Solutions, Inc., d/b/a EWSolutions ("EWS") is a for-profit enterprise offering services in that same field of information and data management who recently began advertising an online study resource for those individuals preparing to take the Data Management Fundamentals Exam. DAMA-I takes no issue with EWS offering such a resource, but it does take serious issue with—and is sustaining continuing irreparable harm as a result of—EWS' use of DAMA-I's federally registered trademarks to promote its course. Specifically, EWS' use of DAMA-I's trademarks has caused and continues to cause confusion and perpetuates the false impression that EWS' exam prep course is endorsed by, licensed by, approved by, or otherwise affiliated with DAMA-I. Further, EWS persists in its illicit use of DAMA-I's trademarks despite being specifically instructed to cease such use.

DAMA-I moves under Rule 65(a) for a preliminary injunction barring EWS, pending trial, from continuing to use any federally registered trademark identified in the accompanying Complaint, Dkt. No. 1, or any confusingly similar modification of any such trademark.

**FACTUAL BACKGROUND**

**A.      DAMA-I and Its Trademarks**

DAMA-I is an all-volunteer organization that traces its roots to its first chapter formation in 1980 and its first election of a board of directors in 1988. *DAMA International History*, dama.org/content/dama-international-history-0 ("DAMA-I History"). Since those formative years,

1

DAMA-I has been consistently growing, dedicating itself to the promotion, understanding, development, and practice of managing data and information as key enterprise assets of any organization. *Mission, Vision, Purpose and Goals*, https://dama.org/content/mission-vision-purpose-and-goals. Among its goals has been to "influence practices, education and certification in the information and data management profession." *Id.* And as part of that mission, DAMA-I worked to create a standardized data management certification program, which simultaneously provides data management professionals an opportunity to achieve professional growth while assuring organizations that its personnel are qualified to manage their most important strategic assets. *Certified Data Management Professionals,* https://cdmp.info/.

Consistent with efforts to promote and educate the data management profession, DAMA-I has also taken steps to secure its substantial investments of time and resources to that end. Specifically, DAMA-I has developed and maintained its own intellectual property portfolio, which includes but is not limited to a number of federally registered trademarks. Among them, and at issue in this matter, are the following Marks-at-Issue ("Marks"):

- "DAMA INTERNATIONAL" – The subject of DAMA-I's U.S. Registration No. 2,649,116, which DAMA-I has been using in interstate commerce since at least 2001;

-  – The subject of DAMA-I's U.S. Registration No. 2,649,117, which DAMA-I has been using in interstate commerce since at least 2001;

- "DAMA" – The subject of DAMA-I's U.S. Registration No. 2,671,677, which DAMA-I has been using in interstate commerce since at least 2001;

- "CERTIFIED DATA MANAGEMENT PROFESSIONAL" – The subject of DAMA-I's U.S. Registration No. 3,816,444, which DAMA-I has been using in interstate commerce since at least 2010; and

- "CDMP" – The subject of DAMA-I's U.S. Registration No. 3,816,445, which DAMA-I has been using in interstate commerce since at least 2010.

(*See* Complaint, Dkt. No. 1, ¶¶ 8-12.) The Marks have become incontestable. (*Id.*)

### B.     EWS and Its Illicit Conduct

As described in DAMA-I's Complaint, EWS has been engaging in a scheme to willfully deceive the public into believing that an online prep course it offers for the Data Management Fundamentals Exam—the first exam required to become a certified data management professional—is endorsed by, licensed by, approved by, or otherwise affiliated with DAMA-I. One aspect of that scheme is predicated on misleading representations made through social media. For example, EWS posted on LinkedIn an online advertisement describing its "new, online, on-demand, college-level, video course [as the] DAMA CDMP® Data Management Fundamentals exam preparation course." (Complaint, Dkt. No. 1, ¶ 14.) That same advertisement contained the ® identifier to expressly identify "CDMP" as a federally registered trademark no less than four times, but it made no mention that the CDMP mark belonged to DAMA-I rather than EWS, it had no disclaimer that EWS' use of the mark did not connote any type of affiliation, approval, or association between DAMA-I and EWS, and it made no attempt to clarify a critical distinction— while DAMA-I is responsible for administering the Data Management Fundamentals *exam*, it has no ties to EWS' prep course. (*See id.* ¶¶ 14-19.)

Another aspect of EWS' fraudulent scheme is predicated on cybersquatting. Specifically, EWS has registered and makes use of the URL https://damacdmp.com—a URL comprised of two federally registered trademarks belonging to DAMA-I—to promote its online prep course referenced above. (*Id.* ¶ 17.) Like its social media efforts, EWS' website makes liberal use of DAMA-I's Marks, employs the ® identifier without disclaimer, explanation, or caveat of any kind,

and misleadingly refers to its "prep course" as the "DAMA CDMP® Fundamentals Exam Prep Course." DAMA CDMP® Data Management Fundamentals Exam Prep Course, EWSolutions, **Error! Hyperlink reference not valid.**https://damacdmp.com/. EWS even uses shorthand to refer to its online resource as "The DAMA CDMP prep course." *Id.*

A third aspect of EWS' fraudulent scheme is predicated on misleading representations found on its website. Most notably, and by no means limiting, EWS prominently displays on its website DAMA-I's stylized mark  to falsely convey that EWS received an award or recognition from DAMA-I. (Complaint, Dkt. No. 1, ¶ 18.) EWS in fact has never received an award or recognition from DAMA-I. (*Id.* ¶ 19.)

Prior to initiating suit, DAMA-I received correspondence from EWS inviting DAMA-I to partner with EWS to offer the online exam prep course referenced above. Not only did DAMA-I decline EWS' offer, but it also specifically requested that EWS discontinue its unauthorized use of the Marks, that EWS take corrective action to address any customer confusion already caused by its online prep course advertisements, and transfer the damacdmp.com domain name to DAMA-I. (*Id.* ¶ 22.) EWS refused, and it continues its illicit use of the Marks to this day.

## ARGUMENT

### A. Applicable Legal Standards

"A [party] seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).) "In the preliminary injunction context, a 'likelihood of success' exists if the party seeking injunctive relief shows that it has a 'better than negligible' chance of succeeding on the merits."

*Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc*., 128 F.3d 1111, 1114-15 (7th Cir. 1997) (quoting *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)).

In a trademark infringement dispute, a "movant shows a likelihood of success by establishing that (1) he has a protectable mark, and (2) that a 'likelihood of confusion' exists between the marks or products of the parties." *Meridian Mut. Ins. Co.*, 128 F.3d at 1115.

Regarding the former, "[f]ederal registration . . . 'confers important legal rights and benefits on trademark owners who register their marks.'" *Matal v. Tam*, 137 S. Ct. 1744, 1753, 198 L. Ed. 2d 366 (2017) (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015)). "Registration, for instance, serves as 'constructive notice of the registrant's claim of ownership' of the mark." *B & B Hardware*, 575 U.S. at 142 (quoting 15 U.S.C. § 1072). "It also is 'prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate.'" *Id.* at 142-43 (quoting 15 U.S.C. § 1057(b)). "And once a mark has been registered for five years, it can become 'incontestable.'" *Id.* at 143 (quoting 15 U.S.C. §§ 1065, 1115(b)). An incontestable registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b).

As to the latter, the existence of a likelihood of confusion hinges on "whether consumers who might use either product would likely attribute them to a single source." *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F.Supp.3d 891, 907 (N.D. Ill. 2019) (citing *Uncommon, LLC v. Spigen, Inc*., 926 F.3d 409, 425 (7th Cir. 2019)). Where a defendant is using a mark without authorization and claims a fair use defense, this Court has recognized that such a defense may take

one of two forms: "classic fair use" or "nominative fair use." *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 717 (N.D. Ill. 2014) (citing Ninth Circuit precedent with respect to nominative fair use because "[t]he Seventh Circuit has not addressed the nominative fair use defense"). "Classic fair use is that in which the alleged infringer has used the trademark holder's mark *only* to describe his own product, *and not at all to describe the trademark holder's product* . . . ., [whereas] nominative fair use occurs when the alleged infringer uses the trademark holder's mark to describe the trademark holder's product, *even if the alleged infringer's ultimate goal is to describe his own product*." *Id.* (alteration in original) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061, 1071-72 (9th Cir. 2003), *vacated on other grounds*, 543 U.S. 111 (2004)).

In instances where "classic fair use" is raised, the "Seventh Circuit has identified seven factors that comprise the likelihood of confusion analysis: '(1) similarity between the mark in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to 'palm off' [its] product as that of another.'" *Caster Connection, Inc. v. Colson Grp. Holdings, LLC*, No. 20 C 1598, 2020 WL 2745982, at *4 (N.D. Ill. May 27, 2020) (alteration in original) (quoting *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001)). "No one factor is determinative . . . , however, the similarity of the marks, the defendant's intent, and actual confusion have been found to be particularly important." *Id*.

Where "nominative fair use" is at issue, the Seventh Circuit appears to have remained silent on the defense, but Ninth Circuit case law is instructive. *See Slep-Tone Entm't Corp.*, 41 F. Supp. 3d at 717 (reciting Ninth Circuit's treatment of the defense). "To successfully assert the nominative

fair use defense, the alleged infringer must show that: (1) the product in question is not readily identifiable without use of the trademark; (2) only so much of the mark is used as reasonably necessary to identify the product; and (3) the user of the mark did nothing that would suggest sponsorship by the trademark holder." *Id.* (quoting *KP Permanent Make-Up, Inc.*, 328 F.3d at 1072). "'When analyzing nominative fair use, it is not necessary to address likelihood of confusion because the nominative fair use analysis replaces the likelihood of confusion analysis,' while 'when the classic fair use defense is raised, it is still necessary to analyze likelihood of confusion.'" *Id.* (quoting *KP Permanent Make-Up, Inc.*, 328 F.3d at 1072).

## B. All Factors Considered in Granting Injunctive Relief Favor DAMA-I

Based on the facts as alleged in its Complaint and as set forth in relevant part herein, DAMA-I meets its burden to show why preliminary injunctive relief is both warranted and needed against EWS. Specifically, DAMA-I will show that (1) it is likely to succeed on the merits of its trademark infringement claims; (2) it is likely to suffer irreparable harm without preliminary injunctive relief; (3) the balance of equities tips in its favor; and (4) the injunction DAMA-I seeks is in the public interest. *See Winter*, 555 U.S. at 20 (setting forth the four-factor test relevant to preliminary injunctive relief inquiries).

### 1. DAMA-I Is Likely to Prevail on Its Trademark Infringement Claims

DAMA-I is likely to succeed on its claims in Counts I and II of the Complaint for trademark infringement under both the Lanham Act and Common law. To prevail on its trademark infringement under the Lanham Act, DAMA-I must show (1) that it has a protected ownership interest in the marks; and (2) that EWS' use of the mark is likely to cause consumer confusion. *Meridian Mut. Ins. Co.*, 128 F.3d at 1114. DAMA-I will show both.

DAMA-I holds incontestable registrations for each of the Marks. (Complaint, Dkt. No. 1, ¶¶ 8-12.) An incontestable registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). DAMA-I will therefore readily demonstrate its protected ownership interest in its Marks.

DAMA-I is also likely to prove that EWS' continued unauthorized use of the Marks constitutes infringement under federal law. DAMA-I alleges and can already prove that EWS is using the Marks without authorization. And even if either nominative or classic fair use is available for *some* of EWS' uses—and they are not—neither is available to EWS for ***all*** its uses.

### a. EWS' damacdmp.com domain name is infringing

EWS is accused of trademark infringement in part because of its registration and use of the domain name, "damacdmp.com." (*See generally* Complaint, Dkt. No. 1.) The domain name is simply a combination of two incontestable marks owned and used by DAMA-I: "DAMA" and "CDMP." (*See id.* ¶ 17.) As such, a consumer naturally would expect damacdmp.com to be controlled and operated by DAMA-I, not EWS. EWS' use of the domain unavoidably results in initial interest confusion. *See, e.g.*, *Verizon California Inc. v. Lead Networks Domains Private Ltd.*, No. CV 09-613-ABC (CWX), 2009 WL 10700112, at *5 (C.D. Cal. Feb. 17, 2009). In *Verizon*, the court explained, "Domain names which merely append a generic word to a distinctive or famous mark are also confusingly similar to the mark upon which they prey." *Id.* (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658, 667-68 (E.D. Va. 2001), *aff'd in part, rev'd in part*, 302 F.3d 214 (4th Cir. 2002) (domain names adding descriptive or generic terms like "bank," "financial," and "shopping" to the mark HARRODS held confusingly similar)). Here, EWS is not merely adding a generic word to a distinctive and incontestable mark, it is combining

two of DAMA-I's Marks together. Such tactics result in initial interest confusion effectively as a matter of law. Further, an assessment of the most relevant likelihood-of-infringement factors confirms as much. *See Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) (identifying the most important factors to consider to assess initial interest confusion "in the context of the Web, . . . are (1) similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the Web as a marketing channel") (case cited with approval by *Qualitas Mfg. Inc. v. R. Lang Co.*, No. 09 C 2255, 2010 WL 11658336, at *2 (N.D. Ill. May 3, 2010)). The first factor, similarity of the marks, weighs heavily in favor of initial interest confusion.

The second factor, relatedness of the goods or services, also weighs heavily in favor of initial interest confusion. EWS already admits to a direct relationship between the goods and services offered by the parties. (*See* Complaint Exhibit 2.) Specifically, DAMA-I administers various online exams for certification purposes, including the Data Management Fundamentals Exam, while EWS offers an online prep course for that exam. (*Id.*) Moreover, the parties' products are not just related, they are directly competitive. In addition to administering the exam, DAMA-I has already partnered with a different third party, Wilshire Conferences, Inc. d/b/a DATAVERSITY to offer online training for that same exam and certification process. (*See Partners*, https://dama.org/content/partners (identifying DATAVERSITY as a DAMA-I partner); *see also DMBoK and CDMP Preparation Learning Plan*, https://bit.ly/2MM8l9g (specifically noting, "[t]he DAMA International-endorsed Learning Plan was developed by DATAVERSITY, DAMA International, and Christopher Bradley, the VP of Professional Development at DAMA"). The relatedness of the goods and services offered by both Plaintiff and Defendant, then, supports a conclusion of initial interest confusion.

The third factor, the parties' simultaneous use of the Web as a marketing channel, cannot be reasonably disputed. As noted above, both parties are using the internet as a marketing channel, which naturally follows given that the product at issue is an online exam prep course.

Where, as here, these factors, "or internet trinity, suggests confusion is . . . likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Interstellar Starship Servs.*, 304 F.3d at 942 (alteration in original) (internal quotations omitted). EWS will be unable to show any remaining factor sufficiently in its favor, let alone all of them. For instance, the strength of Plaintiff's Marks favors a likelihood of confusion, because the Marks at issue are incontestable. (Complaint, Dkt. No. 1, ¶¶ 8-12.) DAMA-I likewise has already obtained evidence of actual confusion, a fifth factor now strongly favoring a finding of infringement. (Complaint, Dkt. No. 1, ¶ 24.) And still another factor favoring infringement relates to EWS' intent to 'palm off' its product as that of another—EWS selected the damacdmp.com domain name knowing that both halves of the domain name were registered trademarks belonging to DAMA-I. (*See generally* Complaint, Dkt. No. 1; *see also Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 434 (9th Cir. 2017) (citing *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir. 2013) to apply "a presumption of intent to deceive" where a party chooses "a designation with knowledge that it is another's trademark).) Under these circumstances, DAMA-I will more than likely prevail in establishing that EWS' illicit use of its damacdmp.com domain name infringes DAMA-I's trademarks.

### b. EWS' online advertisements infringe DAMA-I's marks

In addition to likely proving its case with respect to EWS' domain name selection and use, DAMA-I will also likely prove that EWS' use of the Marks to advertise its online prep course for the Data Management Fundamentals Exam cannot constitute fair use so as to insulate it from

infringement. Indeed, whether it refers to its prep course more formally as the "DAMA CDMP®
Fundamentals Exam Prep Course," or whether it employs shorthand to call it "the DAMA CDMP
prep course," either reference is too confusing to qualify as fair use. (Complaint, Dkt. No. 1, ¶¶
17.) Additionally, under no circumstance does EWS' appropriation of DAMA-I's stylized graphic,
confusingly resembling DAMA-I's incontestable stylized mark, qualify for fair use of any kind.
(*Id.* ¶¶ 31, 41.)

Taking EWS' product descriptions at face value, EWS uses the various Marks to describe
its own online exam prep course. (*Id.* ¶¶ 14, 17 (labeling its prep course as the "DAMA CDMP®
Fundamentals Exam Prep Course" and "The DAMA CDMP prep course").) Any "fair use"
available to EWS under this circumstance would be limited to "classic fair use," which would be
evaluated by an assessment of the likelihood-of-confusion factors. *Slep-Tone Entm't Corp.,* 41 F.
Supp. 3d at 717. As noted above in evaluating EWS' improper domain name registration and use,
however, at least six factors establish that EWS' advertisements do not qualify as classic fair use.
Indeed, even where customers would be exercising the utmost care in selecting exam prep course
to prepare for DAMA-I's "Data Management Fundamentals Exam" (*see* cdmp.info/exams/
(providing the full formal name of the exam at issue and the opportunity to schedule its
administration)), confusion would necessarily result—EWS is using the very same incontestable
Marks, knowing they are registered marks belonging to DAMA-I, to describe its own version of
an exam prep course through the same online marketing channels used by DAMA-I, where
DAMA-I uses those online marketing channels to advertise both its related administration of the
Data Management Fundamentals Exam as well as its own sponsored and competing exam prep
course. The most educated consumers—including those within DAMA-I itself—have already been

confused into believing EWS' course is affiliated with DAMA-I. (Complaint, Dkt. No. 1, ¶ 24.) EWS' use of the Marks cannot qualify as classic fair use.

EWS fares no better in evaluating the availability of nominative fair use. Nominative fair use insulates a defendant's use of another's mark when three conditions are met: (1) the product in question is not readily identifiable without use of the trademark; (2) only so much of the mark is used as reasonably necessary to identify the product; and (3) the user of the mark did nothing that would suggest sponsorship by the trademark holder." *Slep-Tone Entm't Corp.*, 41 F. Supp. 3d at 717. Here, EWS' use of the Marks flouts each of these requisite conditions.

First, EWS' advertisements for its online prep course have no need to use any of the Marks. EWS' online prep course is to prepare individuals to take the certification examination entitled, "Data Management Fundamentals Exam." (*See CDMP–Exams*, https://cdmp.info/exams/.) EWS' advertisements, however, mislabel the exam as the "DAMA CDMP® Fundamentals Exam," and misleadingly refers to the exam in shorthand as "the CDMP®." (*See DAMA CDMP® Fundamentals Exam Prep Course*, https://damacdmp.com.) More accurately, "the CDMP®" is not an exam, but rather a certification—it stands for CERTIFIED DATA MANAGEMENT PROFESSIONAL. One therefore does not "pass" the CDMP; one ***becomes*** a CDMP after passing the requisite examinations and satisfying the other criteria set forth by DAMA-I. (*See id.* (claiming that "Passing the CDMP® is difficult" and stating that "DAMA's CDMP® Certification is the Gold Standard for Data Management Professionals").) As such, EWS' use of the Marks to describe DAMA-I's products is not only unnecessary, but it is also inherently misleading and confusing.

Second, EWS uses the Marks far more than is reasonably necessary to identify DAMA-I's examination or certification process. As noted above, the manner in which it uses the Marks is actually misleading, so its use of the Marks at all is not reasonably necessary *per se*. Further, even

if a single instance of EWS' use of the Marks was done correctly and was arguably justifiable (*e.g.*, "DAMA's CDMP® Certification is the Gold Standard for Data Management Professionals), it does not justify EWS' repeated use of the Marks throughout its advertisements, and it in no way justifies any need for EWS to incorporate confusingly similar and stylized DAMA-I graphics into its advertisements. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1181 (9th Cir. 2010) (reasoning that the defendant "could adequately communicate their message without using the visual trappings of [plaintiff's] brand").

Third, and relatedly, EWS' advertisements unequivocally and misleadingly suggest sponsorship or endorsement by DAMA. *See Toyota Motor Sales*, 610 F.3d at 1176 ("Consumers may reasonably infer sponsorship or endorsement if a company uses an unnecessary trademark or 'more' of a mark than necessary.") In this case, EWS makes repeated, gratuitous, and inherently misleading uses of the Marks, misusing the CDMP® mark as a misnomer for the DAMA-I's Data Management Fundamentals Exam while incorporating prominently and needlessly DAMA-I's stylized designs. Under these circumstances, DAMA-I will more than likely prevail in establishing that EWS' unauthorized use of the Marks is not fair use of any kind.

### 2. DAMA-I Will Continue to Suffer Irreparable Harm Absent Relief

A preliminary injunction is justified and necessary in this circumstance because DAMA-I presumptively will continue to suffer irreparable harm absent the Court's intervention. *See Saeilo Enters., Inc. v. Alphonse Capone Enters., Inc.*, No. 13 CV 2306, 2014 WL 6883085, at *3 (N.D. Ill. Dec. 5, 2014) ("Irreparable harm is generally presumed in trademark infringement cases."). Even if the presumption of irreparable harm is not applied here, however, the harm inflicted by EWS' illicit use of DAMA-I's Marks is irreparable under any standard. Specifically, EWS' use of the Marks to tout its own products having nothing to do with DAMA-I has caused DAMA-I to

lose control over its business reputation, which this Court recognizes as irreparable harm. *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 437–38 (N.D. Ill. 2019) ("[T]he 'most corrosive and irreparable harm [in] trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods.'") (citation omitted)).

As in *USA-Halal*, Defendant's use of Plaintiff's Marks here is without any authorization, supervision, or control. Further, an important element of DAMA-I's reputation and growth has been its consistency in remaining "vendor-independent," partnering deliberately with only select third parties so as to maintain its credibility as a resource available to all data management professionals worldwide. *See Partners*, https://dama.org/content/partners. Indeed, unlike the curriculum offered by DATAVERSITY which was specifically developed with the active involvement of DAMA-I, DAMA-I had no involvement in the development of EWS' curriculum and therefore cannot vouch for the quality or comprehensiveness of the course. Students ultimately disappointed with EWS' curriculum, absent injunctive relief, will necessarily and mistakenly hold DAMA-I responsible for their poor preparation for the Data Management Fundamentals Exam. A preliminary injunction in this circumstance is more than warranted.

### 3. The Balance of Equities Favors a Preliminary Injunction

The equities in this case strongly favor DAMA-I, which has invested considerable time and resources over the last 40 years in developing and maintaining its reputation as a not-for-profit global resource for data management professionals worldwide. *See* DAMA-I History. In contrast, EWS is a for-profit enterprise who is exploiting without authorization, the Marks for pure commercial gain. *See generally Data Management Services*, https://www.ewsolutions.com/. A balance of the equities favors issuance of a preliminary injunction here. *Saeilo Enters., Inc.*, 2014

WL 6883085, at *4 (where court weighed harms in favor of plaintiff because a temporary suspension of Defendants' sales could be remedied).

### 4. A Preliminary Injunction Advances the Public Interest

An injunction that "prevents consumer confusion" in trademark contexts "serves the public's interest in not being deceived about the products they are purchasing." *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-CV-05314, 2016 WL 6092636, at *9 (N.D. Ill. Oct. 19, 2016). Here, EWS' illicit use of the Marks is likely to confuse—and has already confused—consumers, *and even members of DAMA-I itself*. A preliminary injunction is needed to protect the public interest from any further deceptive practices that EWS is continuing to perpetrate.

### C. No Bond Is Necessary

As a not-for-profit, "all volunteer organization" (DAMA-I History), DAMA-I respectfully requests that the Court exercise its discretion to impose no bond for the issuance of the preliminary injunction, or that any amount set be minimal. Its ability to protect its reputation from commercial exploitation by unauthorized parties should not hinge on DAMA-I's ability to pay a ransom extracted by EWS' conduct. Further, DAMA-I's high likelihood of success on the merits favors "minimal bond, or no bond at all." *Prof'l Towing & Recovery Operators of Ill. v. Box*, No. 08 C 4096, 2008 WL 5211192, at *20 (N.D. Ill. Dec. 11, 2008) (granting plaintiff's request for a minimal bond based on high likelihood of success because a $1,000 bond requirement appeared "to advance the purposes of Rule 65(c)" absent objection from defendant).

### CONCLUSION

In light of the foregoing, DAMA-I respectfully requests that the Court grant DAMA-I's Motion for Preliminary Injunction.

Dated this 11th day of August, 2020.

Respectfully submitted,

By:

/s/ Joseph M. Kuo
Joseph M. Kuo (ARDC 6216400)
SAUL EWING ARNSTEN & LEHR, LLP
161 N. Clark Street, Suite 4200
Chicago, IL 60601
Tel. (312) 876-7100
Fax.: (312) 876-0288
joseph.kuo@saul.com

John D. Denkenberger, WSBA No. 25,907
(*pro hac vice* pending)
Brian F. McMahon, WSBA No. 45,739 (*pro hac vice* pending)

CHRISTENSEN O'CONNOR
JOHNSON KINDNESS<sup>PLLC</sup>
1201 Third Avenue
Suite 3600
Seattle, WA 98101
Telephone: 206.682.8100
Fax: 206.224.0779
john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
litdoc@cojk.com

Attorneys for Plaintiff DATA
MANAGEMENT ASSOCIATION
INTERNATIONAL LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on Tuesday, August 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.


/s/ Joseph M. Kuo
Joseph M. Kuo