**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DATA MANAGEMENT | ) | |
| ASSOCIATION INTERNATIONAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 C 04711 |
| | ) | |
| ENTERPRISE WAREHOUSING | ) | Judge John J. Tharp, Jr. |
| SOLUTIONS, INC., d/b/a | ) | |
| EWSOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Data Management Association International ("DAMA-I") brings this lawsuit against defendant Enterprise Warehousing Solutions, Inc., d/b/a EWSolutions. DAMA-I claims EWS violated the Lanham Act, 15 U.S.C. §§ 1114, 1125, through its allegedly infringing use of DAMA-I's registered trademarks. DAMA-I moved for a preliminary injunction enjoining EWS's use of any of DAMA-I's marks and ordering EWS to suspend use of their website, www.damacdmp.com. Mot. Prelim. Inj. 1, ECF No. 28. That motion is granted in part, for the reasons stated below. Defendant Enterprise Warehousing Solutions, Inc. must suspend use of the damacdmp.com domain name and refrain from any use of DAMA-I's stylized trademarks and graphics that resemble those marks. However, EWS may continue to use DAMA-I's marks on a limited basis to describe its exam preparation course, consistent with nominative fair use.

## BACKGROUND

Plaintiff Data Management Association International was established in 1980 as an all-volunteer non-profit association "dedicated to advancing the concepts and practices of information and data management." Am. Compl. ¶ 2, ECF No. 21; Memo. Supp. Prelim. Inj. 1, ECF No. 29.

In service of that mission, DAMA-I has developed a standardized data management certification program, which both "provides data management professionals an opportunity to achieve professional growth" and signals to non-data management professionals that a certified individual is qualified in the field. Memo. Supp. Prelim. Inj. 2. To earn the Certified Data Management Professional certification, individuals must pass the Data Management Fundamentals Exam, offered exclusively by DAMA-I. Defendant EWS began offering Data Management Fundamentals Exam prep courses in 2012; in 2019, it began to offer the course online through EWS's DataManagementU brand. Def.'s Resp. Opp'n 3, ECF No. 31. These online efforts caught DAMA-I's attention.

DAMA-I has several federally registered trademarks, including: U.S. Registration No. 3,816,444, for the mark "CERTIFIED DATA MANAGEMENT PROFESSIONAL"; U.S. Registration No. 3,816,445, for the mark "CDMP"; U.S. Registration No. 2,649,117, for the stylized mark at right; U.S. Registration No. 2,671,677, for the mark "DAMA"; and U.S. Registration No. 2,649,116, for the mark "DAMA INTERNATIONAL." All five of these marks have been incontestable since September 2015; several have been incontestable since August 2008. Am. Compl. ¶¶ 7-13.

DAMA-I alleges that EWS has inappropriately used its marks since at least October 2019, both on its website, www.damacdmp.com, and on other promotional materials for its prep course, posted to social media sites such as LinkedIn. *See* Am. Comp. ¶¶ 14-20. EWS's allegedly infringing use includes referring to its prep course as the "DAMA CDMP® Data Management Fundamentals exam preparation course" *id.* ¶ 14, and using DAMA-I's marks, including its stylized mark, throughout the www.damacdmp.com website. The parties discussed EWS's allegedly infringing use in a series of letters in late 2019. *Id.* ¶¶ 21-24. EWS insisted it had a

legitimate need to use DAMA-I's marks, and the parties were unable to reach a mutually agreeable solution. This lawsuit followed. DAMA-I alleges trademark infringement and false advertising under the Lanham Act. *Id.* ¶¶ 25-46.

## DISCUSSION

A preliminary injunction is an "extraordinary remedy." *Tully v. Okeson*, 977 F.3d 608, 612 (7th Cir. 2020). As such, a party seeking preliminary relief must "make a threshold showing that: (1) absent preliminary relief, [it] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [it] has a reasonable likelihood of success on the merits." *Id.* at 612-13. If the movant makes this threshold showing, the court then proceeds "to consider the balance of harm between the parties and the effect of granting or denying a preliminary injunction on the 'public interest.'" *Id.* The court "employs a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018).

### 1. Likelihood of Success on the Merits

DAMA-I argues that the party moving for a preliminary injunction must only show a "better than negligible" chance of succeeding on the merits. Pl.'s Memo. Supp. 4-5. But as the Seventh Circuit recently reminded district courts, the "better than negligible" standard was retired by the Supreme Court in *Winter v. Nat'l Resources Defense Council*, 555 U.S. 7 (2008). *See Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020). Instead, a "strong" showing of likelihood of success is required; the movant "need not show that it will definitely win the case" or even establish proof by a preponderance, but the argument in support of a preliminary injunction should normally "include[] a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*, citing *Nken v. Holder*, 556 U.S. 418, 434 (2009). Even measured against

3

this higher threshold, however, DAMA-I has sufficiently established a likelihood of success on the merits.

For DAMA-I to prevail on its Lanham Act trademark infringement and false advertising claims, it must establish that its marks are protectable and that EWS's use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). The parties do not dispute that DAMA-I's marks are protectable, but they differ greatly in their assessments of the likelihood of consumer confusion. Likelihood of confusion is a fact-intensive inquiry, normally governed by several factors such as the similarity between the parties' marks, the similarity of the parties' products, the strength of the plaintiff's marks, and the defendant's intent to "palm off" its product as that of the plaintiff. *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 714-15 (N.D. Ill. 2014). But this is a nominative fair use case—EWS is using DAMA-I's marks to "refer to the trademarked good itself," namely, to DAMA-I, its Certified Data Management Professional certification, and to the exam that those seeking the CDMP certification must take. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010).[1] And where a nominative fair use defense is raised, the likelihood of confusion

---

[1] The Seventh Circuit has not addressed the nominative fair use defense, *Slep-Tone*, 41 F. Supp. 3d at 717; as a result, there is no binding precedent guiding this Court's application of the nominative fair use factors in relation to the traditional likelihood of confusion test. And on that issue, circuits have not only split, but splintered. The Third Circuit treats nominative fair use as an affirmative defense, and directs courts to consider the three factors only after the plaintiff has made a showing of likelihood of confusion under a modified version of the traditional analysis. *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222-26 (retaining four *Lapp* factors as relevant to the likelihood of confusion analysis in nominative fair use cases). The Second Circuit has similarly concluded that the nominative fair use factors should supplement, rather than supplant, the traditional factors. *See, e.g., Int'l Info. Sys. Sec. Certification Consortium v. Sec. Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016) (directing district courts to consider the nominative use factors "*in addition to* discussing each of the *Polaroid* factors") (emphasis in original). But the Ninth Circuit and other courts have observed that the traditional factors should not be used at all in nominative fair use cases, because "often many of the factors 'are either unworkable or not suited or helpful as indicators of confusion in this context.'" *Dwyer Instruments, Inc. v. Sensocon,*

analysis is instead performed using three factors "designed to address the risk that nominative use of the mark will inspire a mistaken belief on the part of consumers that the speaker is sponsored or endorsed by the trademark holder." *Id.*; *see also id.* at 1176 (noting that the court's focus must be on whether "reasonably prudent consumer[s] in the marketplace" would be confused; "[u]nreasonable, imprudent and inexperienced web-shoppers are not relevant") (internal quotation marks omitted). The court asks whether 1) the product is "readily identifiable" without use of the mark; 2) the defendant uses more of the mark than was necessary; or 3) the defendant falsely suggests that it is sponsored or endorsed by the trademark holder. *Id.* at 1175-76. If all three questions are answered in the negative there is no infringement; "[nominative] fair use is, by definition, not infringement." *Id.* at 1175. But if DAMA-I can establish a sufficiently strong likelihood that the answer to one or more of these questions is "yes," then an injunction ordering EWS to modify its use of the mark may be appropriate. *Id.* at 1176.

DAMA-I contends that EWS's use is infringing even when evaluated within the nominative fair use framework. First, DAMA-I argues that EWS has "no need to use any of the Marks" because the official name of the test—the "Data Management Fundamentals Exam"—is not trademarked, obviating EWS's need to use marks like "DAMA," "CDMP," or "Certified Data Management Professional" in its marketing materials. Pl.'s Memo. Supp. 12. But this argument is unconvincing. DAMA-I does not contend that the official name of the exam is so widely known that use of the marks is redundant or gratuitous, just that such use is technically avoidable. That

---

*Inc.*, 873 F. Supp. 2d 1015, 1030 (N.D. Ill. 2012), *citing Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012). That is arguably the case here. EWS must use DAMA-I's marks to describe its product—a product that DAMA-I does not itself offer— making factors like the "similarity of the marks," the "strength of the plaintiff's mark," the "relatedness of the products" and the "defendant's intent to 'palm off' its product as the plaintiff's" meaningless. Because the unhelpfulness of the traditional likelihood of confusion factors in this case renders the nominative fair use factors dispositive, the Court need not endorse one circuit's approach.

the name of the exam is not itself trademarked, however, suggests just the opposite—that the name of the exam itself is not widely recognized independent of a connection with DAMA-I's registered marks. And if EWS were only allowed to use the exam's official name, lack of consumer awareness about that name would significantly hinder EWS's ability to reach its target audience. EWS's prep course is exclusively tailored to DAMA-I's test, which individuals take in the hopes of achieving DAMA-I's CDMP certification, so using the marks at issue is the "most straightforward, obvious and truthful way" for EWS to describe its product. *Tabari*, 610 F.3d at 1177; *compare id.* at 1181 ("[I]t's enough to satisfy our test for necessity that the Tabaris needed to communicate that they specialize in Lexus vehicles, and using the Lexus mark . . . accomplished this goal. While using Lexus in their domain name wasn't the only way to communicate the nature of their business, the same could be said of virtually any choice the Tabaris made . . . . We've never adopted such a draconian definition of necessity, and we decline to do so here.").

DAMA-I fares better on the second and third factors. EWS has reason to make some use of DAMA-I's marks, but EWS's admittedly "liberal" use of the marks, and particularly its use of the domain name damacdmp.com, go well beyond what could reasonably be considered necessary to identify the exam to which its prep course relates. EWS's repetitive use of the marks tends to suggest that there is a tie between the organizations and that its prep course is sponsored or endorsed by DAMA-I. First, consider the domain name, which even EWS admits "was not the best choice." Prelim. Inj. Hearing Tr. 23:6, ECF No. 40. In *Tabari*, the Ninth Circuit observed that "[w]hen a domain name consists *only* of [a] trademark followed by .com, . . . it will typically suggest sponsorship or endorsement by the trademark holder," even "despite contrary evidence on the website itself." 610 F.3d at 1177 (emphasis in original). And EWS has used not just one, but two of DAMA-I's incontestable marks to create its domain name. The *Tabari* court did

acknowledge that "if the site is located through a search engine, the customer will click on the link for a likely-relevant site without paying much attention to the URL." *Id.* at 1178; *see also* Hearing Tr. 22:14-23:3 (EWS argues that most people who arrive at damacdmp.com do so through a search engine, not through typing in the URL). But it nonetheless advised that "[o]f course a domain name containing a mark cannot be nominative fair use if it suggests sponsorship or endorsement by the trademark holder" and "trademark.com domains have that effect." *Id.* at 1179. DAMA-I is therefore likely to succeed on its challenge to EWS's current domain name as beyond the scope of nominative fair use.

EWS's use of the marks throughout its website similarly goes well beyond what is needed to make its advertisements intelligible to its target audience and falsely creates the impression that DAMA-I officially sponsors its prep course. The marks "DAMA" and "CDMP" are used over twenty times on the website's landing page alone, and EWS also uses a graphic that combines the globe-like background of DAMA-I's stylized trademark with the term "Certified Data Management Professional" superimposed. *See, e.g.*, *Tabari*, 610 F.3d at 1181 (noting that use of the stylized Lexus mark and "Lexus L" logo was unnecessary, because the defendants "could adequately communicate their message without using the visual trappings" of the plaintiff's brand and such visual cues may be particularly misleading in cyberspace). And while EWS repeatedly warns customers that they are purchasing only a prep course, and not the actual exam, through disclaimers at the point of sale and throughout the website, Def.'s Resp. Opp'n 4-5, it does not go to similar lengths to dispel the potential (and understandable) impression that DAMA-I sponsors the prep course offered at the damacdmp.com URL. Weighed against the totality of the domain name and repeated references to DAMA-I, the DataManagementU.com logo at the top left and the

confusingly worded disclaimer at the bottom left of the website are relatively easily overlooked and ineffective even if noticed.

Because DAMA-I has adequately demonstrated how it proposes to dispel EWS's nominative fair use defense, and thereby establish a likelihood of confusion, it has shown a sufficiently strong likelihood of success on the merits.

### 2. Irreparable Harm and Adequacy of Legal Remedy

Even with a strong showing of a likelihood of success on the merits, a plaintiff must also demonstrate that irreparable harm is "likely" if the court denies a motion for preliminary injunction. *Winter*, 555 U.S. at 22. DAMA-I contends that "EWS' use of the Marks to tout its own products having nothing to do with DAMA-I has caused DAMA-I to lose control over its business reputation," Pl.'s Memo. Supp. 13-14, and argue that, because DAMA-I was not involved in the development of EWS's prep course curriculum, it "cannot vouch for the quality or comprehensiveness of the course," *id.* at 14. DAMA-I also alleges that, absent preliminary relief, "[s]tudents ultimately disappointed with EWS' curriculum . . . will necessary and mistakenly hold DAMA-I responsible for their poor preparation for the Data Management Fundamentals Exam." *Id.*

It takes quite a leap to conclude that DAMA-I will inevitably be scapegoated for a hypothetical test taker's disappointing performance. But as DAMA-I notes, irreparable harm "is generally presumed in cases of trademark infringement." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000).[2] The Seventh Circuit has repeatedly recognized that the "most

---

[2] Some circuit courts have concluded that irreparable harm should no longer be presumed in light of the Supreme Court's decision in *eBay Inc v. MercExchange, L.L.C.*, which overturned a similar presumption in patent cases. 547 U.S. 388 (2006); *see, e.g.*, *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014) (overruling presumption in trademark cases); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013)

corrosive and irreparable harm" attributable to trademark infringement "is the inability of the [trademark holder] to control the nature and quality of the defendants' goods"; this type of "damage to a trademark holder's goodwill" leaves a trademark owner, like DAMA-I, with no adequate legal remedy. *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001); *see Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) (the presumption is based on courts' judgment that "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations"). And the risk of reputational damage is salient "[e]ven if the infringer's products are of high quality." *Re/Max*, 272 F.3d at 424. Such is the case here. EWS admits that it makes "liberal use" of DAMA-I's marks on its website, and the presence of those marks is largely inextricable from the information advertising EWS's own prep course for DAMA-I's Data Fundamentals Exam. Hearing Tr. 22:6-7. EWS may well offer the best value, most comprehensive prep course on the market. But in light of the strongly implied association between EWS and DAMA-I that was critical to the plaintiff's success on the merits, DAMA-I's loss of control over its own reputation warrants the application of the presumption of irreparable harm here.

EWS argues that DAMA-I's delay in seeking preliminary injunctive relief; refusal to collaborate with EWS to find an acceptable solution outside of litigation; and failure to disclose a computation of damages are evidence that the plaintiff is not suffering irreparable harm from

---

(same). The Seventh Circuit has applied *eBay* to overturn the presumption in copyright cases, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), but has not yet addressed the issue in trademark cases. Anticipating that the Seventh Circuit would hold the same in the Lanham Act context, some courts in this district have declined to apply the presumption. *See USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 437 (N.D. Ill. 2019) (collecting cases). However, because the Seventh Circuit has not yet addressed, much less overturned, its binding precedents applying the presumption in trademark cases, *see Eli Lilly*, 233 F.3d at 496, and because EWS did not argue the issue in its briefing in opposition to preliminary relief, this Court will continue to apply the presumption here.

EWS's continued use of the marks. Def.'s Resp. Opp'n 12-14. These arguments are unpersuasive. First, DAMA-I's inability to compute damages is not, as EWS insists, a result of DAMA-I's "lack of seriousness" or a sign that there is a "lack of identifiable harm." *Id.* at 14. To the contrary; the inability to precisely categorize and calculate monetary damages bolsters a plaintiff's claim that it has no adequate remedy at law. *See, e.g.*, *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705 (7th Cir. 2005) ("A plaintiff may suffer irreparable harm if the nature of the loss makes monetary damages difficult to calculate."). To be sure, DAMA-I could approximate its monetary losses related to EWS's unauthorized use of its marks using the licensing fees paid by the authorized users referenced at oral argument. Hearing Tr. 12:9-10. But this type of calculation would only capture one facet of DAMA-I's injury. And the value of DAMA-I's continuing risk of reputational damage and loss of control over its marks—the most important harm driving the Court's irreparable harm analysis—cannot be similarly reduced to a dollar figure. *See, e.g.*, *Miyano Mach. USA, Inc. v. Miyanohitech March., Inc.*, 576 F. Supp. 2d 868, 888 (N.D. Ill. 2008) (irreparable damage occurs "even absent proof of loss of business, because the owner of the mark's reputation, goodwill and the quality of the goods associated therewith are placed outside of its control" and "the owner of the mark stands to lose 'years of nurturing its business'").

Second, the onus on avoiding trademark infringement falls on EWS, and DAMA-I has no obligation to negotiate with EWS about what constitutes an acceptable use of DAMA-I's marks. It's true that DAMA-I may well have avoided unnecessary litigation costs and months of alleged consumer confusion if it had been more receptive to EWS's offers to modify its use of DAMA-I's marks on its web site in late fall 2019. But DAMA-I must only show that its harm is irreparable, not that litigation was unavoidable. In any event; EWS might also have prevented this lawsuit by offering greater limitations on its use of DAMA-I's marks.

10

Finally, DAMA-I is not precluded from seeking injunctive relief based on its delay in seeking a preliminary injunction. EWS is correct that a delay "may raise questions" regarding a plaintiff's claim of irreparable harm. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). But DAMA-I's delay "is only relevant to the extent that [DAMA-I] lulled [EWS] into a false sense of security." *Miyano Mach.*, 576 F. Supp. 2d at 888. And there's no evidence in the record that EWS was so lulled. The parties' late 2019 exchange of letters put EWS on notice that DAMA-I believed EWS's use of the marks was infringing. *See, e.g.*, Def.'s Resp. Opp'n Ex. 13 (December 16, 2019, letter from DAMA-I renewing its demands that EWS cease use of its trademarks; clearly stating that DAMA-I "disagree[s] with [EWS's] conclusions, including, but not limited to, [EWS's] argument that consumers are unlikely to mistakenly believe" that EWS's prep course is endorsed by DAMA-I; expressing that it remained "concerned" about reputational damage resulting from consumer confusion; and warning that DAMA-I was "prepared to take all steps it deems necessary to protect its rights"). And in light of the ongoing COVID-19 pandemic, it is understandable that a lawsuit did not immediately follow; when DAMA-I did file its complaint, it also filed its motion for a preliminary injunction. *Cf. Miyano Mach.*, 576 F. Supp. 2d at 887 (the presumption of irreparable harm may cease to apply where a plaintiff "inexcusably delays" in moving for preliminary injunctive relief). Delay notwithstanding, EWS was repeatedly and expressly told that DAMA-I believed its use of the marks was infringing. And "[a]t no point" after EWS had an opportunity to make its case did DAMA-I indicate a change of heart or a willingness to allow EWS to continue its self-described "liberal," unfettered use of the marks. *Id.* at 888. Because EWS has not overcome the presumption of irreparable harm, DAMA-I has made the threshold showing for preliminary injunctive relief.

### 3. Balancing the Equities

Because DAMA-I has demonstrated a likelihood of success on the merits, that it is suffering irreparable harm, and the inadequacy of remedies at law, the Court must balance the harms to DAMA-I and EWS if injunctive relief is denied, or granted, respectively. To start, trademark injunctions, "particularly one involving nominative fair use, can raise serious First Amendment concerns because it can interfere with truthful communication between buyers and sellers in the marketplace." *Tabari*, 610 F.3d at 1176, *citing Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 763-64 (1976). EWS additionally argues that DAMA-I's requested relief—"forbidding EWS from even non-deceptive and non-confusing use of DAMA-I's marks, and forcing it to 'suspend' use of its website until trial"—would make it "all but impossible for EWS to offer the very online course" that DAMA-I concedes EWS is entitled to offer, thereby tipping the balance of harms heavily in EWS's favor. Def.'s Resp. Opp'n 14. This would be a forceful argument if the full scope of DAMA-I's requested relief were seriously on the table. But where a defendant has a legitimate nominative fair use argument, a district court "may not enjoin nominative use of the mark[s] altogether," unless the defendant is "unable or unwilling to modify their use of the mark" to comply with the three nominative use factors. *Tabari*, 610 F.3d 1176 & n.2. As the Ninth Circuit observed, a blanket injunction like the one DAMA-I requested here "does not advance the Lanham Act's purpose of protecting consumers and preventing unfair competition," and injunctions that frustrate "honest communication" between a defendant and its customers sweep more broadly than is desirable or necessary. *Id.* at 1176-77.

By contrast, the Court's narrower relief—suspending EWS's operations at its current domain name, prohibiting its use of DAMA-I's stylized marks or confusingly similar graphics, and ordering EWS to reduce its use of the other marks to reduce the risk of creating the impression

of DAMA-I's involvement or sponsorship while permitting use sufficient to identify EWS's product—tips the balance of harms in DAMA-I's favor. Though "the proper remedy for infringing use of a mark on a site generally falls short of entirely prohibiting use of the site's domain name," *id.* at 1182, EWS cannot legitimately claim nominative fair use of a URL that is comprised solely of two of DAMA-I's incontestable marks, and it will not be disproportionately harmed by migrating its operations to a different URL. *Compare PACCAR Inc. v. TeleScan Techs.*, 319 F.3d 243, 256-58 (6th Cir. 2003) (affirming a preliminary injunction prohibiting the use of plaintiff's trademarks in defendant's domain name). This tailored injunction protects DAMA-I's intellectual property during the pendency of this litigation, but also affords EWS considerable flexibility to make a nominative fair use of DAMA-I's marks and continue offering the prep course materials it has invested substantial time and effort developing. *See, e.g.*, *id.* at 1177, 1182 (affirming that the context of a defendant's use of marks matters, and noting that uses of the word "independent" or prominent disclaimers of affiliation are "relevant to the nominative fair use analysis"). Finally, so long as EWS's competitively priced course stays in the marketplace, the public interest is best served by injunctive relief that minimizes the risk that consumers will be "deceived about the products they are purchasing." *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16 C 05314, 2016 WL 6092636, at *9 (N.D. Ill. Oct. 19, 2016).

### 4. Bond

DAMA-I requests that this Court grant it preliminary injunctive relief without requiring it to post bond, based on its non-profit, all-volunteer status. But the Seventh Circuit has held that the notion that non-profit entities should be exempted from posting injunction bonds "flies in the face of Rule 65(c), which not only contains no such exception but also states flatly that 'the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security.'"

*Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457-58 (7th Cir. 2010). Though courts have, at times, waived the requirement where it "is satisfied that there's no danger that the opposing party will incur any damages from the injunction," *id.* at 458, that is not the case here—EWS will at a minimum be required to spend time and money migrating and modifying its website and other promotional materials to comply with this Court's order. DAMA-I is therefore required to post an adequate bond. EWS has not, however, provided any basis on which the Court may assess the bond needed to compensate it for costs and damages it will incur if wrongfully enjoined. That omission suggests that its damages would not be significant. The Court will therefore require DAMA-I to post a bond that is more than nominal but unlikely to impose any substantial financial hardship: $5,000.00.

\*      \*      \*

For the foregoing reasons, plaintiff Data Management Association International's motion for a preliminary injunction is granted in part. It is hereby ORDERED:

That Plaintiff Data Management Association International shall post a security bond in the amount of $5,000 within seven days; and

That  Defendant Enterprise Warehousing Solutions, Inc. is enjoined, until further order of the Court:

(1) from operating at the damacdmp.com domain name;

(2) from using DAMA-I's stylized mark, U.S. Registration No. 2,649,117, or similar graphics; and

(3) from using any of DAMA-I's other marks more than five times on any web page or two times in any social media or print advertisement, such restrictions exclusive of the use of any of DAMA-I's marks that may appear in quoted customer testimonials.

Enter:

December 28, 2020

John J. Tharp, Jr.
United States District Judge