**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DATA MANAGEMENT )
ASSOCIATION INTERNATIONAL, )
)
    Plaintiff, )
)
    v. )    No. 20 C 04711
)
ENTERPRISE WAREHOUSING )    Judge John J. Tharp, Jr.
SOLUTIONS, INC., d/b/a )
EWSOLUTIONS, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

This opinion presents several additional chapters in a trademark dispute between a data-management test developer, Data Management Association International ("DAMA-I"), and a test preparation company, Enterprise Warehousing Solutions, Inc. ("EWS"). This Court preliminarily enjoined EWS from abusing DAMA-I's trademarks but allowed EWS to use the marks to describe its own product. Settlement discussions ensued but were unsuccessful. DAMA-I now accuses EWS of flouting the Court's preliminary injunction order. Because EWS's allegedly violative acts are beyond the scope of the Court's injunction, that motion is denied. In turn, EWS alleges that DAMA-I conspired with its Vice President of Professional Development, Christopher Bradley, to push EWS out of the test-prep market. Based on those allegations, EWS seeks to add counterclaims and third-party claims to its answer. The Court allows EWS to add some of the claims against DAMA-I but denies leave to allege claims against Bradley. Finally, Magistrate Judge Weisman recommended sanctions against DAMA-I and an award of attorney's fees to EWS based on DAMA-I's repeated evasive responses to an interrogatory. The Court adopts Judge Weisman's Report and Recommendations.

## BACKGROUND

DAMA-I, a company that markets itself as a non-profit association dedicated to advancing data management, developed a program called the Certified Data Management Professional ("CDMP") certification. To obtain a CDMP certification, an individual must pass the Data Management Fundamentals Exam, which DAMA-I exclusively offers. DAMA-I owns several registered trademarks relating to its certification program, including the marks "CDMP," "DAMA," and "DAMA INTERNATIONAL." EWS, a company unaffiliated with DAMA-I, has offered test preparation courses for the CDMP exam since 2012, and began offering online courses in 2019. This case began in July 2020, when DAMA-I sued EWS for trademark infringement and violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125. DAMA-I alleged that EWS was inappropriately using DAMA-I's trademarks on its website and social media accounts when promoting its prep course.

DAMA-I moved for a preliminary injunction to prevent EWS from using its marks pending resolution of this litigation. In December 2020, this Court granted DAMA-I's motion for a preliminary injunction, agreeing that DAMA-I was likely to suffer irreparable harm from EWS's extensive use of DAMA-I's mark, particularly in EWS's domain name. Consistent with nominative fair use principles, however, this Court recognized that EWS needed to use DAMA-I's mark in a limited manner to describe its exam preparation course. Therefore, this Court preliminarily enjoined EWS

> (1) from operating at the damacdmp.com domain name;
> (2) from using DAMA-I's stylized mark, U.S. Registration No. 2,649,117, or similar graphics; and
> (3) from using any of DAMA-I's other marks more than five times on any web page or two times in any social media or print advertisement, such restrictions exclusive of the use of any of DAMA-I's marks that may appear in quoted customer testimonials.

2

*Data Mgmt. Ass'n Int'l v. Enter. Warehousing Sols., Inc.*, No. 20 C 04711, 2020 WL 7698368, at *6 (N.D. Ill. Dec. 28, 2020). Following unsuccessful settlement discussions, DAMA-I filed a motion for an order to show cause and for attorney's fees, arguing that EWS is violating the Court's preliminary injunction. That motion is pending before the Court and is addressed below.

Discovery proceeded. After DAMA-I's first significant document production, EWS moved to file an amended answer, affirmative defenses, counterclaims against DAMA-I, and third-party claims against Christopher Bradley, DAMA-I's Director and Vice President of Professional Development. According to EWS, discovery has revealed a second chapter to this story. EWS's proposed pleading alleges that DAMA-I conspired to push EWS out of the CDMP test-prep market. DAMA-I allegedly endorses only certain third-party vendors, which DAMA-I calls "Registered Providers," that are affiliated with Bradley. EWS further claims that DAMA-I prevented it and other educational providers from marketing CDMP prep courses because only Registered Providers are authorized to use DAMA-I's mark.

According to EWS's proposed pleading, when EWS launched its CDMP prep course, EWS proposed a revenue-sharing agreement with DAMA-I. In response, DAMA-I sent EWS the cease-and-desist letter that prompted this litigation. Subsequently, DAMA-I endorsed for-profit entities called Dataversity, FIT Academy, and Data Management Advisors as Registered Providers of CDMP prep courses. EWS alleges that Bradley reaps financial benefits through teaching, training instructors for, or owning these companies.

EWS next alleges that Bradley hastily created sham written criteria to create the appearance of a neutral selection process for Registered Providers. After Bradley's lobbying efforts, DAMA-I board members approved Dataversity as DAMA-I's first Registered Provider. Meanwhile, EWS had reached out to the head of the Italy-based FIT Academy, Nino Letteriello,

3

to seek a revenue sharing partnership with FIT Academy and other European DAMA-I chapters (the "European Entities"), which are legally independent entities from DAMA-I. At the time, Letteriello was also the head of DAMA's Italian chapter and the European DAMA coordinator. After Letteriello notified Bradley about EWS's request, Bradley asked Letteriello to instruct the European Entities to ignore EWS's proposal to partner with them. In exchange, Bradley fast-tracked approval of FIT Academy as a Registered Provider. FIT Academy then hired Bradley as a chief trainer and advisory board member. EWS alleges that, less than a week later, DAMA-I and Bradley approved Data Management Advisors, a company Bradley wholly owns and controls, as a Registered Provider. Based on these allegations, EWS moves for leave to amend its answer and add several counterclaims against DAMA-I, as well as third-party claims against Bradley. DAMA-I opposes the motion.

Discovery continued while EWS's motion for leave to amend was pending. Both parties filed motions to compel responses to discovery requests. As relevant to the discovery dispute at issue, EWS sent DAMA-I an interrogatory request seeking information about any lost profits or revenue that DAMA-I suffered because of EWS's alleged infringement. After various attempts by EWS to elicit an adequate response from DAMA-I proved fruitless, Magistrate Judge Weisman ordered DAMA-I to respond to the interrogatory. Unsatisfied with the response that DAMA-I ultimately provided, EWS moved for Rule 37 sanctions and attorney's fees. On August 10, 2022, Judge Weisman issued a report and recommendation to grant sanctions against DAMA-I and award attorney's fees to EWS. DAMA-I objects to Judge Weisman's report and recommendation, while EWS urges the Court to adopt it.

To summarize, before the Court are (1) DAMA-I's motion [74] for an order to show cause and for attorney's fees for EWS's alleged violation of the court's preliminary injunction;

(2) EWS's motion [84] for leave to amend its answer and affirmative defenses and to add counterclaims and third-party claims; and (3) DAMA-I's objection [138] to Judge Weisman's Report and Recommendation of Sanctions. The Court addresses each issue in turn.

## DISCUSSION

### I. Motion for Order to Show Cause

DAMA-I seeks an order as to why EWS should not be held in contempt for failing to adhere to this Court's preliminary injunction order. DAMA-I asserts that EWS violated the Court's order because (1) the domain name damacdmp.com still redirected to EWS's website and (2) EWS used DAMA-I's marks in the HTML source code for some of its web pages.

#### A. Domain Name

The Court agrees with DAMA-I that the damacdmp.com redirection to EWS's website violated the preliminary injunction. By allowing the domain name to redirect to its website, EWS still attracted online traffic through the domain that this Court enjoined it from using. The domain name no longer redirects to EWS's website, however, and does not redirect to any web page. The parties do not focus on this issue in their briefing.

Given the circumstances, the Court finds it sufficient to admonish EWS that it must comply with the Court's order and may not use the damacdmp.com domain name to direct or redirect to any of its web pages.

#### B. HTML Source Code

DAMA-I argues that, by using DAMA-I's marks in its website's HTML source code, EWS violated the third prong of the preliminary injunction, the prohibition on using DAMA-I's marks more than five times on any web page. The Court disagrees.

"Civil contempt is a 'severe remedy' that 'should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Pressure Specialist, Inc. v.*

*Next Gen Mfg. Inc.*, 469 F. Supp. 3d 863, 868 (N.D. Ill. 2020) (emphasis omitted) (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019)). Consistent with those principles of fair notice, the moving party must show an "'unequivocable command' which the party in contempt violated." *Illinois Tool Works, Inc. v. Metro Mark Prod., Ltd.*, 43 F. Supp. 2d 951, 964 (N.D. Ill. 1999) (quoting *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989)).

The Court does not construe its preliminary-injunction order as an "unequivocal command" to refrain from using DAMA-I's mark in EWS's HTML code. To explain the technicalities, HTML source code is code that may be used by search engines to return search results and is publicly available to users but invisible on the face of web pages. Metatags are HTML codes that describe the contents of a web page. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 460 n.3 (7th Cir. 2000). The Seventh Circuit has held that the use of marks as metatags in HTML source code can violate trademark laws because search engines may use them to recognize which websites to suggest to users. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002).[1] In the briefing on the plaintiff's motion for a preliminary injunction, however, the parties did not address the use of marks in HTML source code or metatags. The briefing and arguments regarding the preliminary injunction were about the content *on* EWS's web pages. In the preliminary injunction order, this Court highlighted concerns with consumer confusion when viewing the marks on EWS's website. Therefore, the Court's preliminary injunction prohibited using marks "more than five times *on* any web page." *Data Mgmt. Ass'n*,

---

[1] As EWS notes in response, other courts have found that modern search engines often use their own algorithms based on the number of websites that link or direct users to a given website rather than rely on metatags in the site's HTML source code to return search results. Def. Resp. 2-3, ECF No. 78 (citing *Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015, 1033 n.5 (N.D. Ind. 2012); *Standard Process, Inc. v. Banks*, 554 F. Supp. 2d 866, 871 (E.D. Wis. 2008)).

2020 WL 7698368, at *6. Nowhere in the preliminary injunction order did the Court mention marks invisible to the consumer.

DAMA-I protests that, despite the absence of any mention of source code anywhere in its complaint or in its preliminary injunction briefing, that EWS was on notice that it may not use DAMA-I's marks in HTML source code. In support, DAMA-I leans on federal notice pleading standards. But there is a stark difference between allowing a party to discover the facts underlying its claims and subjecting a party to the "severe remedy" of civil contempt. *Pressure Specialist*, 469 F. Supp. at 868. Indeed, the Court is not aware of any authority that applies *Twombly* and *Iqbal* to evaluate contempt motions.

The Court concludes, therefore, that the use of marks in HTML source code falls outside the scope of the preliminary injunction. Beyond admonishing the defendant for failing to properly discontinue its use of the prohibited domain name, this motion is denied. The Court finds that DAMA-I is not entitled to attorney's fees or further relief.

## II. Motion to Amend

Turning to EWS's motion for leave to amend, EWS seeks to add several counterclaims and third-party claims to its answer based on newly discovered facts—specifically, the facts alleged regarding Bradley's efforts to prevent the European Entities from partnering with EWS. In addition to requesting a declaratory judgment as to any of its rights to use any of the contested marks, EWS asserts myriad legal theories in support of its claim that DAMA-I and Bradley wrongfully excluded it from the ranks of the Registered Providers. In Count Two, EWS alleges that DAMA-I and Bradley violated Section 1 of the Sherman Act by conspiring with others (Letteriello, FIT Academy, Dataversity and Data Management Advisors) to block educational providers from DAMA-I's Registered Provider list, and consequently, the online CDMP prep course market. In Count Three, EWS alleges that DAMA-I and Bradley tortiously interfered with

EWS's valid business relationships with consumers and the European Entities. In Count Four, DAMA-I asserts that Bradley was unjustly enriched by this course of conduct. EWS also alleges a claim that DAMA-I falsely advertised itself as a not-for-profit vendor-independent entity that adhered to neutral standards in choosing Registered Providers, in violation of the Lanham Act (Count VI) and the Illinois Deceptive Trade Practices Act (Count V).

Under Federal Rule of Civil Procedure 15(a), this Court must "freely give leave" to amend a pleading "when justice so requires." This Court must allow amendment "unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015). EWS sought leave to amend within time limits that the Court prescribed, so DAMA-I argues only that allowing amendment would be futile. An amendment would be futile if it could not withstand a motion to dismiss. *See Villars v. Kubiatowski*, 128 F. Supp. 3d 1039, 1043 (N.D. Ill. 2015). DAMA-I first contends that the Court lacks personal jurisdiction over EWS's claims against Bradley. DAMA-I further argues that all of EWS's counterclaims, except the first for declaratory judgment of non-infringement, fail to state a claim for which relief could be granted under Federal Rule of Civil Procedure 12(b)(6).

The Court first addresses the sufficiency of EWS's claims against DAMA-I and Bradley, evaluating them under the Rule 12(b)(6) standard. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Under that now-familiar standard, a pleading must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a pleading need not contain "detailed factual allegations," it must contain more than "labels and conclusions"; "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Twombly*, 550 U.S. at 570. Because the Court concludes that none of EWS's claims against Bradley would survive a Rule 12(b)(6) motion, any third-party claims EWS seeks to include against Bradley would be futile. The Court therefore declines to address DAMA-I's personal jurisdiction arguments.[2]

### A.      Sherman Act

In Count II of its proposed counterclaim, EWS alleges that DAMA-I, Bradley, and the test-prep companies affiliated with Bradley conspired to restrain EWS's participation in the CDMP test prep market. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade." 15 U.S.C. § 1. To state a claim under that section, a party must allege "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury." *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 703 (7th Cir. 2021) (quoting *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012)). The Court gleans two allegedly wrongful acts from EWS's proposed counterclaims: the exclusion of EWS from the Registered Providers list, and DAMA-I's direction to Letteriello to instruct the European Entities to ignore EWS in exchange for FIT Academy's inclusion on the Registered Provider list.

Concerning the first allegedly unlawful act, DAMA-I had every right to endorse certain providers to the exclusion of others. Designating certain exam prep companies as preferred is not

---

[2] The Court notes that Bradley has not appeared as a party in this case. Some courts in this district have evaluated personal jurisdiction arguments on behalf of absent parties in futility analyses. *See Farmer v. DirectSat USA, LLC,* No. 08-CV-3962, 2010 WL 380697, at *4 (N.D. Ill. Jan. 28, 2010); *Nichols v. Granquist*, No. 92 C 8289, 1993 WL 513943, at *2 (N.D. Ill. Dec. 9, 1993). The Court, however, aligns more with cases holding that a party may not assert a lack of personal jurisdiction on behalf of another. *See, e.g., Synthes, Inc. v. Marotta,* 281 F.R.D. 217, 229 (E.D. Pa. 2012) (collecting cases and observing that one has a right to subject oneself to personal jurisdiction as a "matter of individual liberty"). Nevertheless, the Court need not address this issue because EWS is denied leave to assert third-party claims against Bradley based on a failure to state a claim.

an exclusionary tactic. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 396 (7th Cir. 1993) ("[T]he failure of a private, standard-setting body to certify a product is not, by itself, a violation of § 1."). Even if DAMA-I's designation of Registered Providers influences consumer choices, EWS must plausibly allege that the denial of that designation prevents it from competing in the test prep market. *See id.* at 397 (describing no anticompetitive effect from a trade association's influential certification when the certification "was not required to compete in the market"). In cases involving professional-association endorsements, "[i]f the certifying entity lacks the power to prevent (or has not prevented) the professional from practicing without a certification, there has been no antitrust violation." *U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 906 (N.D. Ill. 2019) (collecting cases). The same principle applies here: if EWS is able to market its software despite its exclusion from the Registered Provider list, EWS's Sherman Act claim fails.

Perhaps recognizing this logic, EWS claims that "[o]nly the companies that DAMA-I endorses are authorized to use DAMA-I's marks, which limits all other companies from offering and marketing online CDMP prep courses." Proposed Am. Answer ¶ 77, ECF No. 84-1. That claim is hardly plausible. As EWS admits, this Court has allowed it to continue to use DAMA-I's marks "to describe and market the EWS CDMP prep course under principles of 'nominative fair use.'" *Id.* ¶ 61. EWS does not explain why it cannot market its course within the Court's parameters or how DAMA-I's failure to endorse it has prevented it or other third parties from offering CDMP prep courses. Preventing the unfettered use of an unauthorized trademark is not an unlawful restraint of trade. *See Heinz v. Frank Lloyd Wright Found.*, 762 F. Supp. 804, 807 n.2 (N.D. Ill. 1991) ("A good faith effort to enforce trademark rights is not the type of conduct

precluded by the Sherman Act."). Having failed to allege any market-exclusion arising from DAMA-I's decision not to endorse it, EWS has not plausibly alleged a Sherman Act claim.

EWS's second alleged wrongful act by DAMA-I—inducing the European Entities not to partner with EWS by extending Registered Provider status to Letteriello's company FIT Academy—amounts to another complaint that DAMA-I refused to endorse EWS. EWS claims that DAMA-I, Bradley, Letteriello, and the Registered Providers participated in a group boycott forbidden by the Sherman Act, but its own allegations belie that characterization. Proposed Am. Answer ¶¶ 76, 80, ECF 84-1. A group boycott occurs when a dominant company or companies wrongfully cut off access to a supply, facility, or market necessary for a boycotted company to compete. *See Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 936 (7th Cir. 2000). But, again, there is no basis to conclude that Registered Provider status is necessary for EWS to compete in the CDMP test prep market; the allegations amount to no more than a claim that DAMA-I is refusing to endorse EWS—something it has no obligation to do. "As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009).

Nor is there any basis to conclude that in declining to respond to EWS's inquiries about partnering with it, the European Entities were colluding with DAMA-I to exclude EWS from the ranks of Registered Providers. EWS claims that it pursued revenue sharing partnerships with the European Entities to "market its prep course in Europe," and that Letteriello, at DAMA-I's behest, shut down those proposals. Proposed Am. Answer ¶¶ 42-47, 62(d), ECF 84-1. EWS does not explain what those proposed "partnerships" entailed but generally refers to a partnership as a company's endorsement of a test-prep company, sometimes in exchange for revenue sharing. *Id.* ¶¶ 8, 17, 42. But EWS's proposed counterclaim acknowledges that only DAMA-I can approve

the endorsement of EWS or any other test-prep provider. *Id.* ¶ ¶ 31-33. As alleged, the European Entities lacked authority to bestow Registered Provider status on EWS, rendering EWS's allegations of collusion and a quid-pro-quo agreement between Bradley and Letteriello implausible. *See, e.g., id.* ¶¶ 45-47 (acknowledging that Lettereillo sought and received DAMA-I's "official instruction" to the European Entities in response to EWS's inquiries). EWS's own allegations demonstrate that DAMA-I could not have afforded Letteriello's company Registered Provider status in exchange for influencing the European Entities to ban EWS. EWS emphasizes that the European Entities are legally independent from DAMA-I,[3] but legal independence does not mean that the European Entities could unilaterally dictate DAMA-I's endorsements (much less sell them). EWS's own allegations foreclose that possibility. Exercising that freedom and communicating business decisions to affiliates, even legally independent ones, does not amount to an antitrust violation.

EWS attempts to bolster its feeble antitrust claim with a decades-old expression of hesitation to dismiss per se antitrust claims at the motion-to-dismiss stage. *See Elektra Industries, Inc. v. Honeywell*, *Inc.*, 58 F.R.D. 118, 121 (N.D. Ill. 1973). That reticence, even if it persists today, does not equate to a wholesale abandonment of federal pleading standards. *U.S. Bd. of Oral Implantology*, 390 F. Supp. 3d at 902 ("[J]ust because the conspiracy was possible does not mean it has been plausibly alleged."). Under any antitrust theory—whether per se, quick look or rule of reason—EWS must plausibly allege an unreasonable restraint of trade that affects

---

[3] If the European Entities were not independent from DAMA-I, EWS's claim would likely fail because a corporation cannot conspire with itself. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984).

competition. *See Always Towing & Recovery*, 2 F.4th at 704. Because it has failed to do so, EWS has failed to state a Sherman Act claim against DAMA-I.

### B.    Tortious Interference

In Count III, EWS claims that DAMA-I and Bradley interfered with its reasonable expectation of entering business relationships with third parties, including its customers and the European Entities. "Under Illinois law, a claim for tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) [a] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 WL 64657, at *10 (N.D. Ill. Jan. 8, 2014) (internal quotations and citations omitted). EWS claims that DAMA-I and Bradley tortiously interfered with its economic prospects by directing Letteriello to instruct the European Entities not to deal with EWS.

Allowing EWS's tortious interference claim would be futile because EWS fails to allege a basis for its expectation to deal with the European Entities. For one thing, as described above, EWS's own allegations establish that the European Entities were never able to partner with EWS. The European Entities had no power to endorse EWS, so the basis for EWS's business expectation remains unclear.

In addition, "[a] reasonable expectancy of future business requires more than the hope or opportunity of a future business relationship." *Frain Grp., Inc. v. Steve's Frozen Chillers*, No. 14 C 7097, 2015 WL 1186131, at *4 (N.D. Ill. Mar. 10, 2015) (internal quotations and citations omitted) (collecting cases). EWS merely pronounces its expectation reasonable. EWS does not, for example, allege that it maintained a longstanding relationship with the European Entities or

that the European Entities ever expressed interest in partnering with EWS. *Cf. Alarm Detection Sys., Inc. v. Vill. of Schaumburg,* No. 17 C 2153, 2021 WL 1172240, at *7 (N.D. Ill. Mar. 29, 2021); *Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*, No. 12 C 7670, 2014 WL 126082, at *4 (N.D. Ill. Jan. 14, 2014); *Quantum Foods, LLC v. Progressive Foods, Inc.*, No. 12 C 1329, 2012 WL 5520411, at *3 (N.D. Ill. Nov. 14, 2012). At best, EWS's claims reflect a desire "to garner new business opportunities" with the European Entities. *Frain Grp.*, 2015 WL 1186131, at *4. That is insufficient to state a tortious interference claim. *Id.*

EWS also fails to allege that DAMA-I or Bradley purposefully interfered with its customer relationships. As discussed in the previous section, the European Entities' refusal to partner with EWS did not prevent EWS from selling or marketing its products to customers. Nor does EWS allege that DAMA-I or Bradley directed their actions toward EWS's customers, rather than EWS itself, as Illinois law requires. *See House of Brides*, 2014 WL 64657, at *10. Even if EWS's omission from the Registered Provider list caused some customers to choose another prep company over EWS, any such effect would be indirect and outside the scope of a tortious interference claim. *See id*. Accordingly, EWS has failed to plead a tortious interference claim.

## C.    Unjust Enrichment

In Count IV, EWS brings an unjust enrichment claim against Bradley, which DAMA-I urges the court to deny. Without citing any caselaw in support, DAMA-I argues only that EWS's has not asserted any counterclaim that could serve as a legal predicate to an unjust-enrichment claim. The Court takes EWS's point that a failure to support an argument with legal authority generally constitutes waiver. *See Chaudhry v. Provident Life & Accident Ins. Co.,* No. 12 C 5838, 2014 WL 3511529, at *22 (N.D. Ill. July 16, 2014). In this instance, however, the argument is not DAMA-I's to waive. The Court declines to fault Bradley for DAMA-I's half-hearted defense and therefore conducts its own review of the issue.

14

The Court's review can be brief. The Seventh Circuit has held that unjust enrichment "does not constitute an independent cause of action" under Illinois law. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021) (quoting *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017)). Because the Court concludes that all of EWS' remaining claims against Bradley would not survive a motion to dismiss, EWS's unjust enrichment claim fails for lack of a legal predicate. Leave to include the unjust enrichment claim against Bradley is therefore denied.

### D.    False Advertising

In Counts V and VI, EWS asserts that DAMA-I and Bradley violated the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") and DAMA-I the Lanham Act, 15 U.S.C. § 1125(a). A false advertising claim premised on the IUDTPA is "generally thought indistinguishable from [one brought under] the Lanham Act." *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012). Seeing nothing in EWS's pleading to construe the claim differently under these two theories, the Court needn't further distinguish between them.

Generally, to state a claim for false advertising under the Lanham Act or IUDTPA, a plaintiff must allege

> (1) a false statement of fact by [defendant] in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) [defendant] caused its false statement to enter interstate commerce; and (5)[plaintiff] has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 WL 3637740, at *20 (N.D. Ill. June 11, 2015) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)). EWS alleges that DAMA-I falsely advertises itself on its websites as a

vendor-independent entity and that it falsely represents that it evaluates Registered Providers based on objective criteria. EWS further alleges that these advertisements have deceived individuals seeking CDMP prep courses, causing EWS to suffer economic losses.

As an initial matter, EWS's claims based on DAMA-I's allegedly false vendor-independent status fail to satisfy the third element of a false advertising claim. EWS does not explain why an individual's belief that the CDMP test is designed by a vendor-independent entity would influence her to forgo a CDMP prep course from EWS. EWS therefore cannot bring a false advertising claim based solely on that misrepresentation.

By contrast, EWS's false advertising claims grounded in DAMA-I's allegedly false statements about employing neutral Registered-Provider criteria survive dismissal. DAMA-I's representations that it evaluates Registered Providers based on objective criteria and makes disinterested endorsements reflect the quality of other test-prep companies that compete with EWS. Given that DAMA-I allegedly misrepresents these criteria as objective, the omission of EWS from the Registered Provider list plausibly implies that EWS did not meet those criteria. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 479 (7th Cir. 2020) ("[I]mplied messages in advertising may deceive, and . . . what matters is how consumers actually understand the advertising."). DAMA-I's alleged misrepresentations could lead to the loss of a customer's goodwill and plausibly influence a customer to purchase a Registered Provider's course over EWS's course. Facially, EWS has alleged all of the elements of a false-advertising claim against DAMA-I.

DAMA-I's sole response is that Lanham Act false-advertising claims apply only to false statements about products. Setting aside that some courts have deemed that premise wrong as a matter of law, *see M & R Printing Equip., Inc. v. Anatol Equip. Mfg. Co.*, 321 F. Supp. 2d 949,

951 (N.D. Ill. 2004); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1271-73 (10th Cir. 2000), DAMA-I's Registered Provider criteria are representations about products: EWS's and the Registered Providers' test-prep courses. By declaring its criteria objective, DAMA-I misrepresents the "nature, characteristics, and qualities" of the Registered Providers' products, and, by omission, EWS's products. 15 U.S.C. § 1125(a)(1)(B). Because DAMA-I's single argument fails to persuade the Court that EWS's Lanham Act and IUDTPA claims against it are futile, the Court grants EWS leave to include those counterclaims in its amended answer.

EWS's IUDTPA allegations against Bradley, however, are too thin to include. "Under the I[U]DTPA, [a plaintiff] must show that [a defendant] engaged in one of the types of deceptive conduct enumerated in the statute." *Patel v. Zillow, Inc.*, No. 17 C 4008, 2018 WL 2096453, at *4 (N.D. Ill. May 7, 2018). Here, EWS vaguely gestures toward the IUDTPA and incorporates its prior factual allegations without specifying which of IUDTPA's twelve subsections Bradley violated. The Court doubts that a mere incorporation of previous allegations gives an opposing party sufficient notice of its unlawful conduct. Moreover, "[t]o violate the IUDTPA, a defendant must make some form of communication to the public regarding the plaintiff's [trade practices] that is false, misleading, or deceptive." *LHO Chicago River, L.L.C. v. Rosemoor Suites, L.L.C*, No. 16 C 6863, 2016 WL 11698656, at *2 (N.D. Ill. Oct. 26, 2016) (internal quotations and citation omitted); *see also Robinson v. Walgreen Co.,* No. 20 C 50288, 2022 WL 204360, at *7 (N.D. Ill. Jan. 24, 2022). EWS does not identify a false or misleading representation that Bradley, as opposed to DAMA-I, communicated to the public. Nor does it allege facts showing that Bradley's allegedly deceptive conduct subjects it to a "likelihood of future harm" necessary to obtain injunctive relief under the statute. *Not Dead Yet Mfg. Inc. v.*

*Pride Sols., LLC*, 265 F. Supp. 3d 811, 840 (N.D. Ill. 2017). EWS is therefore denied leave to include an IUDTPA claim against Bradley.

*        *        *

In sum, the Court grants EWS leave to amend its answer, affirmative defenses, and counterclaims to include Count I (because DAMA-I does not contest its inclusion), Count V, and Count VI against DAMA-I. The Court denies EWS leave to include all other claims against DAMA-I and any claims against Bradley. To address a minor point, the Court denies DAMA-I's request to compel EWS to verify its amended answer. No rule or statute imposes such a requirement, and the Court sees no reason to apply one here. *See* Fed. R. Civ. P. 11(a).

## III.    Objections to Report and Recommendation of Sanctions

Finally, the Court addresses DAMA-I's objections to Magistrate Judge Weisman's recommendation of sanctions and attorney's fees against DAMA-I. The protracted nature of this discovery saga warrants a deeper dive into the history of the parties' dispute.

To better understand the scope of its liability, early on in this case, EWS asked DAMA-I about DAMA-I's claimed damages. In October 2020, EWS sent DAMA-I Interrogatory #8, which stated:

> Have you lost any sales or revenue as a result of defendant's alleged actions? If so, identify each person with knowledge, each sale lost, the loss of revenue, and the basis for your assertion.

Pl.'s Resp. to Interrogs. at 8, ECF No. 141-2. In response, DAMA-I revealed that it was "currently aware of lost sales to at least two different institutions" but that it was unable to respond to the rest of the interrogatory due to confidentiality concerns. *Id.* Unsatisfied with this incomplete answer, EWS prodded further. Correspondence between the parties and a meet-and-confer conference yielded little progress and resulted in another inconclusive response from DAMA-I: a promise to produce and identify relevant documents at an unspecified future time.

*Id.* at 9. After two more months in which DAMA-I provided no further information, EWS moved to compel a response to Interrogatory #8, which Judge Weisman granted.

DAMA-I's third response was an improvement over previous iterations, but not by much. In full, the response stated:

> After further review and investigation, DAMA-I is aware of one lost sale as a result of EWS' actions. Subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), DAMA-I further responds that the answer to this Interrogatory may be determined from at least the following documents: DAMA 011948.

*Id.* According to the parties, the referenced Bates stamp denoted an April 2020 email exchange in which two DAMA-I officers and an individual in Germany discussed an agreement with EWS. In a joint status report and during a status hearing before Judge Weisman, EWS pointed out the deficiencies in DAMA-I's response. 4/8/2022 Joint Status Report at 2-3, ECF. No 116; 4/12/2022 Hr'g Tr. at 3, ECF No. 138-2. The email exchange designated by the Bates number did not facially identify persons with knowledge, lost sales or revenue, or the basis for DAMA-I's belief. In addition, the qualifier "at least" left EWS wondering what other sales DAMA-I knew about but did not disclose.

Understandably frustrated with these evasive responses to a straightforward discovery request, Judge Weisman admonished DAMA-I and ordered it, in no uncertain terms, to answer the interrogatory. 4/12/2022 Hr'g Tr. at 10, ECF No. 138-2. In its now fourth attempt to respond, DAMA-I answered, "DAMA-I further states that, after further investigation, it has not lost any direct sales as a result of Defendant's actions." Pl.'s Resp. to Interrogs. at 9, ECF No. 141-3. DAMA-I did not explain its inclusion, for the first time, of the modifier "direct" when referencing sales, nor did it explain its exclusion of any mention of revenue.

Judge Weisman recognized DAMA-I's equivocation as noncompliance with his previous orders. In granting DAMA-I's motion for sanctions, Judge Weisman recommended that DAMA-

I be barred from seeking recovery based on a theory of its lost profits or revenue. Judge Weisman further found that DAMA-I acted in bad faith in failing to respond directly to Interrogatory #8, and that an award of attorney's fees to EWS would be appropriate.

DAMA-I objects to Judge Weisman's recommendations. It first argues that, despite a motion to compel, a court order and two incomplete interrogatory responses, it was providing full and fair responses to EWS's interrogatory all along. Specifically, DAMA-I argues that Judge Weisman's April 2021 order directing DAMA-I to fully respond to the interrogatory was unnecessary because DAMA-I complied with Federal Rule of Civil Procedure 33(d) in its third response. The Court is not convinced.

Rule 33(d) allows a party to produce business records in response to an interrogatory, but only when the answer "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records." Although, as DAMA-I argues, the citation of a Bates stamp is sufficient to ***invoke*** Rule 33(d), the mere reference to a Bates stamp does not necessarily render the response sufficient. *See Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.*, 59 F. App'x 830, 839 (7th Cir. 2003). When a responding party invokes Rule 33(d), the moving party must show that the disclosures are inadequate, for example, "because the information is not fully contained in the documents." *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 289963, at *2 (N.D. Ill. Feb. 7, 2005). That is exactly what EWS did here, both in its joint status report to the Court and during a status hearing. *See* 4/8/2022 Joint Status Report at 2-3, ECF. No 116 ("[The document identified in response] does not identify persons with knowledge, particularly in its suggestion that there may be other unidentified documents from which responsive information may be gleaned; and it does not identify the claimed loss of revenue."); 4/12/2022 Hr'g Tr. at 3, ECF No. 138-2. The burden then shifts to the responding party to justify

its use of business records instead of answering in narrative form. *See Bell*, 2005 WL 289963, at *2. DAMA-I's response at the hearing that EWS should seek the information about the third parties identified its own document, 4/8/2022 Joint Status Report at 6-7, ECF. No 116, did not satisfy that burden. DAMA-I did not respond to EWS's concern about other unidentified documents or unexplained revenue. And it also did not explain why, if DAMA-I did not know anything about the transaction in the document, the transaction formed the "basis" for knowledge of any sale. Judge Weisman therefore reasonably directed DAMA-I to respond more fully to the interrogatory.

As for the last interrogatory response, DAMA-I maintains that its response was more than sufficient. DAMA-I explains that the word "direct" was meant to provide EWS more details to satisfy the Court's order to respond to the interrogatory. But when a responding party describes only a subset of what the requestor requests, that approach only creates more questions. Because the Lanham Act contemplates availability of damages caused by loss of direct sales and damages caused by indirect reputational harms, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014), DAMA-I provided a narrower, rather than a more detailed response to EWS's question. It defies belief that experienced lawyers would fail to recognize that ***direct*** damages are a subset of ***any*** damages. DAMA-I still does not explain, moreover, why it failed, after multiple admonitions from Judge Weisman, to address any lost revenue. The Court therefore agrees with Judge Weisman that DAMA-I's interrogatory responses were entirely inadequate.

DAMA-I next argues that Judge Weisman's recommendation of sanctions was inappropriate because EWS failed to comply with Local Rule 37.2's requirement that parties meet and confer before filing a discovery motion. Judge Weisman distinguished EWS's motion,

which seeks sanctions, from a routine discovery motion governed by Local Rule 37.2. He also observed, in light of DAMA-I's continuous resistance to answering the interrogatory, that further discussions between counsel would have been futile. This Court agrees. Although there may be instances where a party's sanctions motion seeks to circumvent Local Rule 37.2, court intervention was justified in this case. EWS sought sanctions after a meet-and-confer, a court order on a motion to compel, a joint status report, a status hearing, and a second court order all could not inspire DAMA-I to submit an adequate discovery response. DAMA-I had more than sufficient opportunity to correct its responses before EWS sought sanctions. Having failed, repeatedly, to seize that opportunity, DAMA-I cannot invoke Local Rule 37.2 to excuse its behavior.

DAMA-I also challenges Judge Weisman's finding that it acted in bad faith. In addition to maintaining that its answer was full and complete, DAMA-I asserts that Judge Weisman led it to believe its third interrogatory answer was sufficient under Rule 33(d). DAMA-I cites Judge Weisman's denial of DAMA-I's motion to compel an interrogatory response from EWS, in which Judge Weisman noted that EWS produced data sufficient to answer the relevant part of DAMA-I's interrogatory. Initially, the Court is not convinced that the circumstances surrounding DAMA-I's motion to compel were materially similar to those surrounding EWS's motion. Even if DAMA-I's reliance on Judge Weisman's prior order justified its *third* response, however, DAMA-I's interpretation of Rule 33(d) does not explain its evasive *fourth* response. And whatever Judge Weisman's implicit representations in his other discovery orders, his explicit directions to DAMA-I to answer fully EWS's interrogatory—without any semantic craftsmanship—were clear.

That leaves Judge Weisman's consideration of appropriate sanctions. The Court agrees that the scope of the sanction should be limited to the dispute surrounding Interrogatory #8. Sanctions must be proportional "to the severity of plaintiff['s] misconduct." *Nelson v. Schultz*, 878 F.3d 236, 238-39 (7th Cir. 2017). To that end, the Court further agrees that limiting DAMA-I from recovering damages based on any lost sales or revenue streams is appropriate. Normally, such a sanction would be a harsh substantive limitation on a plaintiff's ability to seek a subset of damages to which it is entitled. But DAMA-I assures EWS and the Court that it has abandoned all theories based on its own lost profits. The Court recognizes that DAMA-I's interrogatory responses have precluded it from relying on a lost-profit damages theory in the future, rendering this sanction more symbolic than substantive. Given the serious nature of DAMA-I's conduct, the Court finds the symbolism warranted. Moreover, without any offer to stipulate that it will not seek damages based on lost profit or revenue, the sanction gives the Court appropriate assurance that DAMA-I will keep its word.

The Court also agrees that an award of attorney's fees—though one limited to fees incurred in this discovery dispute—is appropriate. Under Federal Rule of Civil Procedure 37(b)(2)(C), attorney's fees against a party disobeying a discovery order are appropriate unless the failure to respond was "substantially justified." "The test for substantial justification is one of reasonableness." *United States v. Kemper Money Mkt. Fund, Inc.*, 594 F. Supp. 185, 187 (N.D. Ill. 1984). In other words, "if reasonable people could differ as to the appropriateness of the contested action," then an award of fees is unwarranted. *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992). If viewing DAMA-I's fourth interrogatory response in isolation, reasonable people could perhaps debate its appropriateness. But after EWS's numerous attempts to obtain a response and multiple court orders and admonitions, DAMA-I's response can only be

characterized as willfully evasive. The Court therefore awards EWS the reasonable fees incurred in litigating its motion to compel discovery responses as well as its motion for sanctions. Any objections to EWS's fee petition are referred to Magistrate Judge Weisman.

*    *    *

For the foregoing reasons, the Court denies DAMA-I's motion for an order to show cause, grants in part and denies in part EWS's motion for leave to amend its answer and add counterclaims and third-party claims, and adopts Magistrate Judge Weisman's August 10, 2022 Report and Recommendation.

Dated: November 10, 2022

John J. Tharp, Jr.
United States District Judge